STATE OF CONNECTICUT *v.* MAURICE FLANAGAN
(AC 24539)

Flynn, C. J., and Schaller, Bishop, DiPentima, McLachlan, Gruendel, Harper, Rogers and Lavine, Js.

Argued June 7, 2006—officially released July 3, 2007

*Richard W. Callahan,* special public defender, for the appellant (defendant).

*Nancy L. Chupak,* assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Kevin J. Murphy,* senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Maurice Flanagan, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1)

and 53a-48 (a).[1] On October 24, 2005, the appeal was argued before a panel of three members of this court, which, with one judge dissenting, affirmed the judgment of conviction. *State* v. *Flanagan*, 93 Conn. App. 458, 890 A.2d 123 (2006). Thereafter, this court granted the defendant's motion for reconsideration and reargument en banc, in which the defendant challenged this court's rejection of his claim that the trial court had violated his right to self-representation. We affirm the judgment of the trial court.[2]

The following facts are relevant to our resolution of the defendant's appeal. At trial, the defendant was represented by a special public defender. On several occasions during the trial, the defendant expressed his dissatisfaction with his attorney's performance. Prior to jury selection, the defendant filed a motion to dismiss his attorney. The defendant claimed that his attorney was not investigating the case adequately. The defendant's attorney acknowledged the existence of problems with investigating matters related to the case and made representations to the court concerning his investigative efforts. The court thereafter denied the defendant's motion, noting that the defendant's attorney had been a "great advocate" for the defendant.

On March 18, 2003, just before the state rested its case, the court conducted an in-chambers conference with the prosecutor and the defendant's attorney. The

---

[1] The jury found the defendant not guilty of two counts of murder in violation of General Statutes §§ 53a-54a (a) and 53a-8, two counts of attempt to commit murder in violation of General Statutes §§ 53a-54a (a), 53a-8 and 53a-49 (a) (2), and one count of conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48 (a).

[2] This opinion supersedes in part this court's opinion in *State* v. *Flanagan*, supra, 93 Conn. App. 458. Specifically, this opinion supersedes this court's prior analysis of the defendant's self-representation claim. See id., 468–79. We leave undisturbed this court's analysis of the defendant's other claim raised on appeal, which is that the evidence was insufficient to sustain his conviction. See id., 464–67.

defendant's attorney informed the court that he did not intend to call any witnesses and that the defendant disagreed with this aspect of his trial strategy. The court subsequently stated to the defendant in open court that it was aware of the proposed strategy of the defendant's attorney as well as the defendant's dissatisfaction with it. The court stated: "Did you want to tell me anything about that? You don't need to tell me anything about it, but I just wanted to give you an opportunity, if you did, to be heard yourself. It's [your attorney's] decision, but I understand sometimes that counsel and their clients can have different points of view, and [your attorney] told me that you and he do have a different point of view. I just want to give you an opportunity, if you wish to, to make me aware of what your point of view is. Did you want to say anything?"

The defendant replied that he viewed his attorney's strategy as being "too narrow" and that he believed that, if the defense called witnesses to testify, the jury would be able to evaluate the case "from a different angle." The defendant expressed his view that for the defense not to present any evidence would afford the jury only "one option," which would lead to a finding of guilt. The defendant analogized his attorney's strategy to one used in the game of chess and opined that it was inappropriate. The defendant also recalled that, in a prior trial, the jury found him guilty after the attorney representing him in that case did not present any evidence in his defense.

The court informed the defendant that "these kind of tactical decisions" were for his attorney to make after consulting with the defendant. The court asked the defendant's attorney if he had discussed this strategy with the defendant; the defendant's attorney represented that he had done so. The defendant's attorney added that, after additional consideration, he had

become "even more solid in [his] position" to forgo the presentation of any evidence.

The court then addressed the defendant as follows: "I can't fully appreciate your feelings because I'm not in your place. I certainly understand, I think, your reservations, having gone through this experience once. At the same time, these are [your attorney's] decisions. He's a very experienced attorney. He has tried many cases. I've had the opportunity to observe his performance in this case from . . . January 8, 2003, when we had some hearings on motions. As far as I'm concerned, his performance has been beyond competent and been superior. If these are his decisions, I'm sure he has given them ample consideration. I'm sure he has taken into consideration your feelings about it, and those are decisions that are left to the attorney for good reason, sir."

Once again, the defendant addressed the court, stating that he disagreed with his attorney's decision not to present the testimony of an alibi witness, described as an informant for the Federal Bureau of Investigation. The defendant stated that he did not understand his attorney's decision not to present this witness' testimony. The defendant stated: "So, I feel before I get convicted with all this time for a crime I didn't commit, I should have some say so. And . . . if we rested right now, I feel I'll be convicted." The court replied: "I understand your position. As I've indicated before . . . these are [your attorney's] decisions to make. He's got a good track record in making these decisions and although that may not give you any more confidence, it makes his decisions in this case understandable to me, and I'm satisfied that he has consulted adequately with you."

After the court discussed other matters with the prosecutor, it canvassed the defendant concerning his decision to waive his right to testify. The court thereafter

informed the defendant's attorney and the prosecutor that, absent a request to the contrary from the defendant's attorney, it would deliver the standard instruction informing the jury that it could draw no adverse inference from the defendant's decision not to testify. The following colloquy between the defendant and the court then took place:

"[The Defendant]: Excuse me, Your Honor. Don't I have the right to finish this case myself without him there?

"The Court: In a word, no. But are you making that request to represent yourself in the remainder of the case?

"[The Defendant]: I mean, if he's not going to do what I feel is in my best interest, I don't think that he should be my attorney. I mean, this is my life. Like I explained to him, when this is over, if I lose, he just goes on to another case. I'm the one who has to go to jail. And he's not doing what I feel is in my best interest. He's doing what he feels is in his best interest, not mine. So, I don't understand how his interest comes before my interest.

"The Court: Well, it doesn't appear to me, Mr. Flanagan, based on my observations of [your attorney's] performance from January 8, 2003, to today, which is March 18, 2003, that his decisions and his actions have been in his interest as opposed to yours. So, I'm—and I can't imagine why he'd be changing courses now. I mean, [your attorney's] decisions, as best as I have observed, have been solely in your interest. And his performance has been beyond competent and, in my view, superior over the last two and one-half months. So, while you may disapprove of his trial tactics, and I understand your feelings, his obligation is to consult with you and then to make his best professional decisions. The fact that you disagree with him over trial tactics does not,

at this stage of the case where the state is about to rest, after we have been on trial essentially for about two and one-half months, does not constitute the kind of exceptional circumstances that I would have to find in order for me to allow you either to have a new lawyer or to represent yourself at this point in time. So, if you're making a request of me that you be allowed to represent yourself or that you be allowed to retain or have new counsel appointed for you, that request is denied." The defendant did not address the court further, the defendant's attorney did not address the court with regard to the defendant's statements and the court thereafter turned its attention to other matters. The defendant's attorney did not present any evidence on the defendant's behalf.

At the commencement of court proceedings two days later, on March 20, 2003, the court addressed the defendant's attorney with regard to whether it should continue to permit the defendant to remain unshackled in the courtroom during the proceedings. The court explained that it asked the defendant's attorney to speak to him with regard to this issue, as follows: "I asked [your attorney] to do that, Mr. Flanagan, because I know you're angry and disappointed the other day at the turn things took about resting and my not permitting you to represent yourself." The defendant's attorney related to the court that "strategic differences" between himself and the defendant continued to exist. After the court addressed other matters before it, the defendant's attorney informed the court that the defendant desired to state something "on the record for his own sake at [that] point because we do have the disagreement." With the court's permission, the defendant stated, "I just want to put it on the record that I wanted to call witnesses and that I feel that this is being done against my will and it's not what I want." The court noted that the defendant's comments were reflected in the record.

On appeal, the defendant claims that he "requested to waive counsel and proceed pro se" and that the court, in the manner that it responded to and analyzed his request, violated his right to self-representation afforded by the federal constitution.[3] The defendant argues that the court should have canvassed him in accordance with Practice Book § 44-3 and then, on the basis of such canvass, exercised only limited discretion in ruling on his request. The defendant argues that the court improperly considered only whether exceptional circumstances justified his request. According to the defendant, one of the consequences of the court's failure to conduct the proper inquiry is that the record is devoid of the facts necessary to evaluate the merits of his request. The defendant asks that his conviction be reversed and the case be remanded for a new trial.

The state takes issue with the defendant's characterization of what transpired at trial. The state argues that the defendant did not make a definitive request of any nature but merely inquired about his rights. The state argues: "[T]he defendant at most was only inquiring about his right to waive counsel and proceed pro se.

---

[3] Our Supreme Court "generally [has] interpreted the state and federal constitutions as providing essentially equivalent protections with respect to a defendant's right to self-representation." *State* v. *Shashaty*, 251 Conn. 768, 780, 742 A.2d 786 (1999), cert. denied, 529 U.S. 1094, 120 S. Ct. 1734, 146 L. Ed. 2d 653 (2000). Although the defendant, in his brief, references the right to self-representation explicitly afforded under article first, § 8, of our state constitution, the defendant did not brief separately a claim under the Connecticut constitution or argue that he was entitled to greater rights thereunder by means of an analysis in accordance with the standard enunciated in *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992). The defendant has analyzed his claim exclusively under the federal constitution. The appellate courts of this state consistently have declined to review state constitutional claims when such claims are unaccompanied by a separate and sufficient analysis pursuant to *Geisler*. See, e.g., *State* v. *Colon*, 272 Conn. 106, 154 n.26, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); *State* v. *Lindo*, 75 Conn. App. 408, 410 n.2, 816 A.2d 641, cert. denied, 263 Conn. 917, 821 A.2d 771 (2003). Accordingly, our review is limited to the federal constitution.

Indeed, he did not even answer affirmatively when the court asked if he was making such request. Instead, [the defendant] simply continued on to criticize his attorney's performance." According to the state, in the absence of the defendant's clear and unequivocal assertion of the right to self-representation, the court was not required to conduct a canvass in accordance with § 44-3 or to permit the defendant to exercise his right to self-representation.[4]

The defendant seeks review of his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or reversal under the plain error doctrine codified in Practice Book § 60-5. We will review the claim under *Golding* because the record is adequate for review and the claim is of constitutional magnitude.

The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed

---

[4] The state also argues that the court's response to the defendant's inquiry was proper because, even if the defendant had asserted his right to self-representation, such an assertion was untimely because it occurred after the start of the trial. Because we conclude that the defendant did not clearly and unequivocally assert his right to self-representation, we need not and do not address this issue.

Chief Judge Flynn, in his dissenting opinion, asserts that the majority "decides for the first time on appeal that the defendant's request was equivocal, effectively ignoring the fact that the trial court ruled on the request, and thereby avoiding the substantial questions the defendant raises on appeal." Although it is unspecified which "substantial questions" the majority has "avoid[ed]," it suffices to respond that sound principles of judicial restraint and judicial economy counsel us to resolve only those issues that are necessary to the proper determination of this appeal. It is well settled that "[c]onstitutional issues are not considered *unless absolutely necessary to the decision of a case*." (Emphasis added; internal quotation marks omitted.) *State* v. *Cofield*, 220 Conn. 38, 49–50, 595 A.2d 1349 (1991).

of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." In *Adams* v. *United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942), the United States Supreme Court recognized that, as applied in criminal cases in the federal courts, the sixth amendment embodies "[t]he right to assistance of counsel and the correlative right to dispense with a lawyer's help . . . ." The court stated: "An accused must have the means of presenting his best defense. He must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court. But the Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open." Id. The court reasoned that "an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury, and so likewise may he competently and intelligently waive his Constitutional right to assistance of counsel." Id., 275. The court cautioned that "to deny [a defendant] in the exercise of his free choice the right to dispense with some of [the safeguards guaranteed by the constitution] . . . is to imprison a man in his privileges and call it the Constitution." (Citations omitted.) Id., 280.

In *Faretta* v. *California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the United States Supreme Court held that the sixth amendment embodies a right to self-representation and that "a defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so." (Emphasis in original.) The court stated: "The

right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' *Illinois* v. *Allen*, 397 U.S. 337, [350–51, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970)] (*Brennan, J.*, concurring)." *Faretta* v. *California*, supra, 834.

The *Faretta* court stated: "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits. . . . Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." (Citations omitted; internal quotation marks omitted.) Id., 835.

The Supreme Court in *Faretta* also addressed the concern that some defendants might exercise their right to self-representation solely to disrupt criminal trials. The court deemed it constitutional for a trial court to terminate the exercise of the right to self-representation if it was exercised for such ends. The court stated: "[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. . . . Of course, a state may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent

the accused in the event that termination of the defendant's self-representation is necessary. . . . The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." (Citations omitted.) Id., 834–35 n.46.

In *McKaskle* v. *Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984), the Supreme Court discussed the scope of the right to self-representation recognized in *Faretta*: "A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard. The *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial." (Emphasis in original.) Id., 174. Likewise, the Connecticut Supreme Court has "asserted the inviolability of the right of self-representation." *State* v. *Brown*, 256 Conn. 291, 302, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001).

Following *Faretta*, state and federal courts have addressed issues related to the right to self-representation. "[C]ourts consistently have discussed the right to self-representation in terms of invoking or asserting it"; *Munkus* v. *Furlong*, 170 F.3d 980, 983 (10th Cir. 1999); and it is well settled that there can be no infringement of the right to self-representation absent a defendant's proper assertion of the right. See *Daniels* v. *Lee*, 316 F.3d 477, 490 (4th Cir.), cert. denied, 540 U.S. 851, 124 S. Ct. 137, 157 L. Ed. 2d 93 (2003). The right to self-representation, unlike the right to representation by counsel in a criminal proceeding, is not self-executing; "the right to counsel is preeminent over the right to self-representation because the former attaches automatically and must be waived affirmatively to be lost, while the latter does not attach unless and until it [i]s

*asserted.*" (Emphasis in original; internal quotation marks omitted.) *Marshall* v. *Dugger*, 925 F.2d 374, 376 (11th Cir. 1991).

In *State* v. *Gethers*, 197 Conn. 369, 377–78, 497 A.2d 408 (1985), our Supreme Court noted that courts in other jurisdictions have required that defendants assert any request to proceed pro se in a clear and unequivocal manner. The following year, in *State* v. *Carter*, 200 Conn. 607, 612, 513 A.2d 47 (1986), our Supreme Court adopted what is commonly known as the "clear and unequivocal" test: "The constitutional right of self-representation depends . . . upon its invocation by the defendant in a clear and unequivocal manner." The *Carter* court further stated: "In the absence of a clear and unequivocal assertion of the right to self-representation, a trial court has no independent obligation to inquire into the defendant's interest in representing himself, because the right of self-representation, unlike the right to counsel, is not a critical aspect of a fair trial, but instead affords protection to the defendant's interest in personal autonomy. . . . When a defendant's assertion of the right to self-representation is not clear and unequivocal, recognition of the right becomes a matter entrusted to the exercise of discretion by the trial court. . . . In the exercise of that discretion, the trial court must weigh into the balance its obligation to indulge in every reasonable presumption against waiver of the right to counsel." (Citations omitted; internal quotation marks omitted.) Id., 613–14. Our Supreme Court further explained: "By contrast, once there has been an unequivocal request for self-representation, a court must undertake an inquiry, on the record, to inform the defendant of the risks of self-representation and to permit him to make a knowing and intelligent waiver of his right to counsel." Id., 613 n.9. The court also stated: "A trial court, faced with the responsibility of reconciling a defendant's inherently inconsistent rights

to self-representation and to counsel, is entitled to await a definitive assertion of a request to proceed pro se. Any other ruling would permit a defendant on appeal to claim a violation of his rights whether he defended himself or was represented by an attorney." Id., 614.

Courts from around the country have echoed these concerns. The United States Court of Appeals for the Tenth Circuit summarized the relevant considerations as follows: "A defendant's waiver of his right to representation and his concomitant election to represent himself must be clearly and unequivocally asserted. . . . The reason that a defendant must make an unequivocal demand for self-representation is that otherwise convicted criminals would be given a ready tool with which to upset adverse verdicts after trials at which they had been represented by counsel. . . . It follows that if a defendant in a criminal proceeding makes an *equivocal* demand on the question of self-representation, he has a potential ground for appellate reversal no matter how the [trial] court rules. If the [trial] court denies [the] defendant's equivocal demand to represent himself, the defendant, on appeal will argue that his constitutional right to self-representation has been denied. And if the [trial] court grants [the] defendant's demand for self-representation, the defendant, on appeal, will argue that his waiver of the right to counsel was not intelligent, knowing and unequivocal." (Citations omitted; emphasis in original; internal quotation marks omitted.) *United States* v. *Treff*, 924 F.2d 975, 978–79 (10th Cir.), cert. denied, 500 U.S. 958, 111 S. Ct. 2272, 114 L. Ed. 2d 723 (1991); see also *United States* v. *Tarantino*, 846 F.2d 1384, 1420 (D.C. Cir.) (noting that equivocal requests may be made by defendants solely to create issue on appeal), cert. denied sub nom. *Burns* v. *United States*, 488 U.S. 840, 109 S. Ct. 108, 102 L. Ed. 2d 83 (1988).

"The requirement that a request for self-representation be clear and unequivocal . . . prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation. A defendant who vacillates at trial places the trial court in a difficult position because it must traverse . . . a thin line between improperly allowing the defendant to proceed *pro se*, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation. . . . In ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a constitutional primacy to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation." (Citations omitted; emphasis in original; internal quotation marks omitted.) *United States v. Frazier-El*, 204 F.3d 553, 559 (4th Cir.), cert. denied, 531 U.S. 994, 121 S. Ct. 487, 148 L. Ed. 2d 459 (2000).

The clear and unequivocal requirement is also one of many safeguards of the fundamental right to counsel. "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without

it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence." *Powell* v. *Alabama*, 287 U.S. 45, 68–69, 53 S. Ct. 55, 77 L. Ed. 158 (1932).

"The particular requirement that a request for self-representation be clear and unequivocal is necessary to protect against an inadvertent waiver of the right to counsel by a defendant's occasional musings on the benefits of self-representation. . . . This protection against an inadvertent waiver of the right to counsel is especially important because representation by counsel does not merely tend to ensure justice for the individual criminal defendant, it marks the process as fair and legitimate, sustaining public confidence in the system and in the rule of law." (Citations omitted; internal quotation marks omitted.) *United States* v. *Frazier-El*, supra, 204 F.3d 558–59. "The importance of the right to counsel is reflected in the precautions required when a defendant seeks to relinquish it." *United States* v. *Proctor*, 166 F.3d 396, 401 (1st Cir. 1999). As stated previously, our Supreme Court has determined that a trial court must " 'indulge in every reasonable presumption against waiver' of the right to counsel." *State* v. *Carter*, supra, 200 Conn. 614, quoting *Brewer* v. *Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977). Our Supreme Court has stated: "[W]e harbor no illusions that a defendant's decision to waive counsel and [to] proceed pro se generally will lead to anything other than disastrous consequences . . . ." (Internal quotation marks omitted.) *State* v. *Jones*, 281 Conn. 613, 647, 916 A.2d 17 (2007). Additionally, our rules of practice require that a court accept a waiver of the right to counsel only after it is satisfied that the defendant "[h]as been made aware of the *dangers and disadvantages of self-representation*." (Emphasis added.) Practice Book § 44-3 (4).

"To exercise the right to self-representation . . . a criminal defendant must negotiate a number of procedural obstacles." *Adams* v. *Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989). The first of these obstacles is that a defendant must clearly and unequivocally assert the right to self-representation. As our Supreme Court in *Carter* stated, once a defendant clearly and unequivocally asserts the right to self-representation, his assertion or request triggers an inquiry by the court to determine whether he has, in fact, exercised his right. *State* v. *Carter,* supra, 200 Conn. 613 n.9. "To invoke his Sixth Amendment right under *Faretta* a defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to his request. Insofar as the desire to proceed pro se is concerned, [a defendant] must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made. . . . [T]he court must then conduct a hearing on the waiver of the right to counsel to determine whether the accused understands the risks of proceeding pro se." *Dorman* v. *Wainwright,* 798 F.2d 1358, 1366 (11th Cir. 1986), cert. denied sub nom. *Dugger* v. *Dorman,* 480 U.S. 951, 107 S. Ct. 1616, 94 L. Ed. 2d 801 (1987).

The second obstacle is that a defendant must demonstrate to the court that he has knowingly, voluntarily and intelligently exercised the right. "While a defendant has an absolute right to self-representation, that right is not self-executing. A trial court in this state must satisfy itself that several criteria have been met before a criminal defendant properly may be allowed to waive counsel and proceed pro se." *State* v. *Day,* 233 Conn. 813, 822, 661 A.2d 539 (1995). In Connecticut, Practice Book § 44-3 "was adopted in order to implement the right of a defendant in a criminal case to act as his own

attorney in defending himself . . . ." (Citation omitted.) *State* v. *Gethers*, 193 Conn. 526, 532–33, 480 A.2d 435 (1984). Our Supreme Court has observed that "[Practice Book] § 961 [now § 44-3] and the constitutional requirements for permitting a defendant to waive his right to counsel and, thereby, assert his constitutional right to represent himself, are synonymous." *State* v. *Wolff*, 237 Conn. 633, 653–54, 678 A.2d 1369 (1996). Section 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant: (1) [h]as been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled; (2) [p]ossesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself; (3) [c]omprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and (4) [h]as been made aware of the dangers and disadvantages of self-representation."

The canvass codified in § 44-3 "cannot be construed to require anything more for an effective waiver of counsel than is constitutionally mandated, because such a waiver triggers the constitutional right of an accused to represent himself. . . . The multifactor analysis of [Practice Book] § 961 [now § 44-3], therefore, is designed to assist the court in answering two fundamental questions: first, whether a criminal defendant is minimally competent to make the decision to waive counsel, and second, whether the defendant actually made that decision in a knowing, voluntary and

intelligent fashion." (Citations omitted; internal quotation marks omitted.) *State* v. *Day*, supra, 233 Conn. 822; see also *Godinez* v. *Moran*, 509 U.S. 389, 400, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993).[5] A court may, however, accept a waiver of the right to counsel without canvassing a defendant in accordance with § 44-3 "if the record is sufficient to establish that the waiver is voluntary and knowing." *State* v. *Webb*, 238 Conn. 389, 429, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000). Thus, after a defendant initially asserts his right to self-representation in a clear and unequivocal manner, he "properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel." (Internal quotation marks omitted.) *State* v. *Townsend*, 211 Conn. 215, 220, 558 A.2d 669 (1989).

Having set forth the general legal principles that apply, we turn to our standard of review. The defendant's claim, in part, presents an issue of fact in that we must determine what the defendant conveyed to the trial court with regard to his right to self-representation. See *Spencer* v. *Ault*, 941 F. Sup. 832, 842 (N.D. Iowa 1996), and cases cited therein. To the extent, however,

---

[5] In *Godinez*, the United States Supreme Court explained what process is due when a defendant seeks to waive his right to counsel. The court explained that a trial court should determine, first, whether the defendant is competent and, second, whether the waiver of his constitutional right is knowing and voluntary. *Godinez* v. *Moran*, supra, 509 U.S. 400. "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. . . . The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." (Citation omitted; emphasis in original.) Id., 401 n.12. The competency standard for waiving the right to counsel is no higher than the competency standard for standing trial. Id., 391. Further, a trial court is required to make a competency determination only when it "has reason to doubt the defendant's competence." Id., 401 n.13.

that we must determine whether the court violated his right to self-representation in the manner claimed, the claim presents an issue of law. Thus, the claim presents a mixed question of law and fact subject to plenary review by this court. See *State* v. *Peeler*, 271 Conn. 338, 399, 857 A.2d 808 (2004) (mixed questions of law and fact subject to plenary review), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

We begin our analysis by examining the findings of the trial court. The court did not expressly find that the defendant clearly and unequivocally had asserted his right to self-representation. The defendant argues, and we agree, that this case necessarily revolves around the following question that he asked of the court: "Don't I have the right to finish this case myself without him there?" The court's response to the defendant's question, as well as his subsequent statements related thereto, reflects the court's implicit understanding that the defendant had not clearly and unequivocally asserted his right to self-representation. See *United States* v. *Hernandez*, 203 F.3d 614, 621 (9th Cir. 2000) (noting it is appropriate to examine trial court's response to claimed self-representation request to determine whether request unequivocal); *Reese* v. *Nix*, 942 F.2d 1276, 1280–82 (8th Cir. 1991) (same), cert. denied, 502 U.S. 1113, 112 S. Ct. 1220, 117 L. Ed. 2d 457 (1992).

Initially, the court responded to the defendant's question as follows: "In a word, no. But are you making that request to represent yourself in the remainder of the case?" Following the court's initial and direct reply in the negative, it asked the defendant to clarify his question.[6] Importantly, the court plainly asked the

[6] Although it would have been better practice for the court to have responded to the defendant's inquiry in a more precise manner, the colloquy between the defendant and the court, when viewed in its entirety, reflects that the court courteously afforded the defendant an opportunity to explain his question and to speak his mind. The defendant does not claim that the

defendant whether he was making a request to represent himself during the remainder of the trial. It is reasonable to infer that the court recognized that the defendant had *inquired* about his right to self-representation but had neither clearly nor unequivocally requested to represent himself during the remainder of the trial.

The defendant did not respond affirmatively when the court asked him whether he had requested that he be allowed to "represent [him]self" but went on to make statements concerning his disapproval of his attorney's representation. For example, the defendant stated in part: "I don't think that he should be my attorney." The defendant's reply prompted the court to discuss once again the efforts of the defendant's attorney, apparently to assuage the defendant's lingering doubts as to his attorney's abilities. The court also stated that the defendant's expressions of disagreement with his attorney's trial strategy were not a sufficient basis on which to permit him to obtain a new attorney or to represent himself. The court ultimately stated: "So, if you're making a request of me that you be allowed to represent yourself or that you be allowed to retain or have new counsel appointed for you, that request is denied." The court's use of the phrase, "if you're making a request," is telling; it indicates that the court had not found that the defendant clearly had requested anything. Likewise, that the court ruled in the alternative, denying requests for self-representation or for the appointment of new counsel, further reflects that the court did not consider the defendant's question or his subsequent reply to the

court misled or misinformed him with regard to his right to self-representation. Nor does he claim that the court discouraged him from asserting his right to self-representation. Rather, he claims that he clearly and unequivocally asserted the right and that the court improperly failed to canvass him in accordance with Practice Book § 44-3.

court's inquiry as a clear and unequivocal assertion of the right to self-representation.[7]

The court asked the defendant, in the most basic terms, whether he was requesting to represent himself. This inquiry reflects that the court had not determined that such a request had been made. At the same time, it also provided the defendant an opportunity to make such a request. It is noteworthy that the court did not canvass the defendant in accordance with Practice Book § 44-3 or further inquire into the defendant's interest in self-representation. Although it is by no means dispositive, the fact that the court did not engage in such conduct supports our conclusion that the court did not determine that such a request had been made.

The court's reference, on March 20, 2003, to its ruling on March 18, 2003, does not indicate any finding to the contrary or shed any additional light on the issue. The court mentioned to the defendant that it was aware that he was "angry and disappointed" because it did not permit him to represent himself. The court's statement was made days after its initial response to the defendant's inquiry. Neither the defendant nor his attorney had asked the court to revisit its earlier ruling or to articulate the factual or legal basis for the ruling. The record reflects that the court made this comment

---

[7] A somewhat analogous situation existed in *State* v. *Sheppard*, 172 W. Va. 656, 672–73, 310 S.E.2d 173 (1983), in which a trial court expressly denied a defendant the right to represent himself without first conducting an extensive inquiry into his statements that he would prefer to represent himself. The West Virginia Supreme Court of Appeals held that the defendant's statements concerning self-representation, which nonetheless prompted an adverse ruling from the court, could not "be characterized as an unequivocal demand." Id., 672. The court rejected the defendant's claim that his statements warranted an inquiry into his request for self-representation, stating: "[W]here a defendant does not make a[n] . . . unequivocal demand to exercise the right of self-representation, the trial court need not conduct a detailed hearing on the issue of whether the demand was knowingly and intelligently made." Id., 673.

in the context of a wholly unrelated matter, whether the defendant would remain unshackled during the proceedings. Thus, it appears to be a spontaneous remark unrelated to the subject matter at hand and an attempt to manage the trial by calming the defendant, not a finding that the defendant had clearly and unequivocally requested to represent himself on March 18, 2003. Further, the court's remark is entirely consistent with a finding that the defendant, two days earlier, had not clearly and unequivocally requested to represent himself.[8]

Having concluded that the court implicitly found that the defendant had not clearly and unequivocally asserted his right to self-representation, we next determine whether the court's finding was proper. First, we must discuss briefly the "clear and unequivocal" requirement and, second, examine the defendant's representations to the court to determine whether the court's finding is supported by the record.

In *Carter*, our Supreme Court equated a clear and unequivocal assertion of the right to self-representation with "a definitive assertion of a request to proceed pro se." *State* v. *Carter*, supra, 200 Conn. 614. This court recently stated: "[M]ere expressions of dissatisfaction with counsel's performance do not constitute a clear

---

[8] Chief Judge Flynn, in his dissenting opinion, asserts that the majority "would have us ignore the court's statement made on the record two days after the defendant first made the request to represent himself" and that those statements "should not be ignored." Our analysis and discussion of the court's statements to the defendant on March 20, 2003, plainly belies the assertion that we either ignore these statements or suggest that they should be ignored. After we set forth and carefully examine the statements at issue, we conclude that they do not reflect a determination by the trial court that the defendant had clearly and unequivocally asserted his right to self-representation and that they do not shed any light on the issue before us. For the rationale set forth in our discussion of these statements, and mindful of the purpose of and legal significance of articulations, we likewise disagree that the court's statements to the defendant constitute an articulation of any earlier ruling.

and unequivocal assertion of the right to self-representation. . . . Neither does vacillation between the options of proceeding pro se or with counsel suffice." (Citations omitted.) *Quint* v. *Commissioner of Correction*, 99 Conn. App. 395, 404–405, 913 A.2d 1120 (2007). Courts in other jurisdictions likewise have held defendants to a "stringent standard for judging the adequacy of an assertion of the right to self-representation . . . ." *United States* v. *Weisz*, 718 F.2d 413, 425–26 (D.C. Cir. 1983), cert. denied, 465 U.S. 1027, 104 S. Ct. 1285, 79 L. Ed. 2d 688 (1984). Thus, a clear and unequivocal assertion has been defined as the expression of a "purposeful choice reflecting an unequivocal intent to forgo the assistance of counsel." (Internal quotation marks omitted.) *Williams* v. *Bartlett*, 44 F.3d 95, 100 (2d Cir. 1994). Other courts have defined a clear and unequivocal request simply as a statement that would convey to a reasonable person that a defendant wanted to conduct his or her own defense. See, e.g., *Buhl* v. *Cooksey*, 233 F.3d 783, 793 (3d Cir. 2000); *Stano* v. *Dugger*, 921 F.2d 1125, 1143 (11th Cir. 1991); *Dorman* v. *Wainwright*, supra, 798 F.2d 1366–67.

We turn to the defendant's own statements to the court, on which his claim ultimately falters. As set forth previously and discussed briefly, the defendant asked the court: "Don't I have the right to finish this case myself without him there?" To a reasonable listener, this question was an inquiry concerning the right to self-representation. The defendant asked this question following a colloquy with the court concerning his dissatisfaction with his attorney's performance, specifically, his attorney's decision not to present an alibi witness on the defendant's behalf. The court initially answered in the negative but explicitly asked the defendant if he was "making that request to represent [himself] in the remainder of the case." *The defendant did not reply that he had made such a request.* Instead,

the defendant expressed his dissatisfaction with the performance of his attorney, stating that he did not "think" his attorney should represent him. The defendant's initial question and subsequent complaints in this regard cannot reasonably be viewed as a purposeful declaration or a definitive assertion that he intended to conduct his own defense. The defendant did not make any other statements relevant to our inquiry, nor did he make any further inquiries concerning his right to self-representation at a later time during the proceedings.

Thus, we hold that the trial court properly determined that the defendant's statements had not risen to the level of a clear and unequivocal request for self-representation. In so holding, we are guided by numerous decisions, both from this state and other jurisdictions, in which courts have considered whether statements made by defendants have constituted clear and unequivocal assertions of the right. When examined in light of these decisions, the defendant's statements in the present case fall significantly short of the mark. We especially are guided by our Supreme Court's holding in *Carter*. During his criminal trial, the defendant in *Carter* expressed dissatisfaction with the representation he had received from his attorney. *State* v. *Carter*, supra, 200 Conn. 611. In the course of a colloquy with the trial court, the defendant stated: "I am misrepresented and now I have to misrepresent myself." (Internal quotation marks omitted.) Id. Moments later, the defendant stated: "I'll have to represent myself." (Internal quotation marks omitted.) Id. The defendant claimed on appeal that the trial court, which did not inquire into his interest in self-representation or permit him to represent himself, violated his right to self-representation. Id., 607. Our Supreme Court held that the record "fail[ed] to establish a clear and unequivocal

invocation of the defendant's right to represent himself." Id., 614.

We also are persuaded by our holding in *State* v. *Williams*, 64 Conn. App. 512, 781 A.2d 325, cert. granted, 258 Conn. 911, 782 A.2d 1251 (2001) (appeal dismissed April 24, 2003). During his criminal trial, the defendant in *Williams* expressed his dissatisfaction with his attorney's representation. Id., 525. During a colloquy with the court, the defendant stated: "Can I defend myself?" (Internal quotation marks omitted.) Id., 528. The defendant later repeated that request: "Can I defend myself?" (Internal quotation marks omitted.) Id. On appeal, the defendant argued that the trial court, which neither inquired into the basis for his request to represent himself nor permitted him to represent himself, violated his right to self-representation. Id., 525. This court rejected the defendant's claim that his right to self-representation had been violated, holding that "the defendant never clearly and unequivocally *asserted* that right." (Emphasis in original.) Id., 531; see also *Reese* v. *Nix*, supra, 942 F.2d 1281 (holding that defendant's statement, " '[w]ell, I don't want no counsel then,' " not clear and unequivocal assertion); *Jackson* v. *Ylst*, 921 F.2d 882, 889 (9th Cir. 1990) (holding that defendant's statements, " 'I want to fight in pro per then,' " and " '[r]elieve him and I do this myself,' " not clear and unequivocal assertion).

This case is similar to *United States* v. *Light*, 406 F.3d 995 (8th Cir. 2005). During a colloquy with a United States District Court judge in his criminal trial, the defendant in *Light* asked: "What's the rule on representing yourself?" (Internal quotation marks omitted.) Id., 999. The court informed the defendant that he had the option of representing himself, explained the negatives of pursuing such option and instructed the defendant that his attorney would speak on his behalf. Id. On appeal, the defendant argued that the District Court

had "foreclosed his ability to represent himself." Id. The United States Court of Appeals for the Eighth Circuit rejected the claim: "In the instant case, [the defendant] asked the district court, 'What's the rule on representing yourself?' Because [the defendant] only asked the district court for information about 'the rule' on self-representation and manifested no intention to actually represent himself, this is an . . . equivocal statement . . . . [T]he right to self-representation could not have been denied improperly because [the defendant] did not clearly and unequivocally invoke it." Id.[9]

Like the defendants in *Williams* and *Light*, the defendant in the present case inquired about his right to self-representation rather than clearly manifesting an intent to represent himself. It is obvious from the context of the defendant's question that he was frustrated with his attorney. His expressions of dissatisfaction did not constitute a clear assertion of the right to self-representation, the court did not find them to be such, and its finding was reasonable and amply supported by the record.[10]

---

[9] Noting that the trial court's response to the statements of the defendant in the present case is distinguishable from the District Court's response to the statements of the defendant in *Light*, both dissenting opinions disagree with our characterization that *Light* is similar to the present case. We cite and discuss *Light* for a different proposition, however, one that should be evident from our opinion, yet will be set forth again here. *Light* is cited and discussed along with *Carter*, *Williams* and other decisions, as one of "numerous decisions, both from this state and other jurisdictions, in which courts have considered whether statements made by defendants have constituted clear and unequivocal assertions of the right." In the present case, the defendant asked the court, "[d]on't I have the right to finish this case myself without him there?" In *Light*, the defendant asked the court, " '[w]hat's the rule on representing yourself?' " *United States* v. *Light*, supra, 406 F.3d 999. These statements concerning the right to self-representation are similar, and we therefore do not hesitate to look to the holding of the United States Court of Appeals for the Eighth Circuit that the defendant in *Light* had merely inquired about his right to self-representation and had not asserted such right.

[10] Chief Judge Flynn, in his dissenting opinion, states in relevant part: "Whatever others might say about the initial dialogue [between the defendant and the court], it is unquestionable that the court viewed this request as

In the absence of a clear and unequivocal assertion of the right to self-representation, a trial court has no duty to inquire into a defendant's interest in self-representation. *State* v. *Jones*, supra, 281 Conn. 648; *State* v. *Carter*, supra, 200 Conn. 613; *State* v. *Quint*, supra, 99 Conn. App. 407; *State* v. *Williams*, supra, 64 Conn. App. 531; *State* v. *Casado*, 42 Conn. App. 371, 381, 680 A.2d 981, cert. denied, 239 Conn. 920, 682 A.2d 1006 (1996). Thus, the court did not improperly fail to canvass the defendant in accordance with Practice Book § 44-3. The defendant has not demonstrated that a constitutional violation clearly exists and clearly deprived him of a fair trial. Accordingly, his claim fails under *Golding*'s third prong.[11]

The judgment is affirmed.

In this opinion SCHALLER, BISHOP, GRUENDEL and LAVINE, Js., concurred.

FLYNN, C. J., dissenting. We are heirs of Connecticut colonists who distrusted lawyers because so many from the profession were aligned with King George.[1] In colonial times, the right most prized was the right to represent one's self rather than engage such a lawyer

one of self-representation, and it clearly articulated its position." Two panels of this reviewing court have not agreed unanimously as to either the nature of the defendant's statements or the significance of the court's response to the defendant. This fact alone undermines Chief Judge Flynn's definitive assessment of what transpired during trial and reflects the ambiguous nature of the defendant's inquiry concerning the right to self-representation.

[11] In light of our *Golding* analysis, we likewise reject the defendant's resort to relief under the doctrine of plain error. "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Alston*, 272 Conn. 432, 456, 862 A.2d 817 (2005).

[1] See *State* v. *Gethers*, 197 Conn. 369, 389, 497 A.2d 408 (1985).

advocate.[2] This right was so valued that, early on, pleading for hire was illegal in the colonies, including Connecticut.[3] This explains why, in 1818, the people of Connecticut, one of the first thirteen states, adopted a constitution that expressly guaranteed this right so that no implication of the right of self-representation was necessary as in the sixth amendment to the United States Constitution.[4] Our state constitution expressly guarantees a defendant the right to be heard in court "by himself and by counsel . . . ." Conn. Const., art. I, § 8. This guarantee also elucidates why Connecticut's rule-making body adopted a rule of practice that provides in relevant part: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. . . ." Practice Book § 44-3; see also *State* v. *Gethers*, 193 Conn. 526, 532, 480 A.2d 435 (1984). In this case, we now are called on to decide whether the

---

[2] See *State* v. *Colon*, 272 Conn. 106, 320–21, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); *State* v. *Gethers*, 197 Conn. 369, 389, 497 A.2d 408 (1985).

[3] As explained in *Faretta* v. *California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975): "The Founders believed that self-representation was a basic right of a free people. Underlying this belief was not only the antilawyer sentiment of the populace, but also the 'natural law' thinking that characterized the Revolution's spokesmen. See P. Kauper, The Higher Law and the Rights of Man in a Revolutionary Society, a lecture in the American Enterprise Institute for Public Policy Research series on the American Revolution, Nov. 7, 1973, extracted in 18 U. of Mich. Law School Law Quadrangle Notes, No. 2, p. 9 (1974). For example, Thomas Paine, arguing in support of the 1776 Pennsylvania Declaration of Rights, said: 'Either party . . . has a natural right to plead his own cause; this right is consistent with safety, therefore it is retained; but the parties may not be able . . . therefore the civil right of pleading by proxy, that is, by a council, is an appendage to the natural right [of self-representation] . . . .' Thomas Paine on a Bill of Rights, 1777, reprinted in 1 Schwartz 316." *Faretta* v. *California*, supra, 830 n.39; see also *State* v. *Colon*, 272 Conn. 106, 321, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); *State* v. *Gethers*, 197 Conn. 369, 389, 497 A.2d 408 (1985).

[4] *State* v. *Gethers*, 197 Conn. 369, 390–91, 497 A.2d 408 (1985).

trial court acted properly in denying the defendant, Maurice Flanagan, this time-honored right.

I respectfully dissent from the opinion of the majority, which decides for the first time on appeal that the defendant's request was equivocal, effectively ignoring the fact that the trial court ruled on the request, and thereby avoiding the substantial questions the defendant raises on appeal.

The defendant claims that the court improperly infringed on his constitutional rights to due process and self-representation under the federal and the state constitutions and that it committed plain error by using an incorrect legal standard and by failing to follow the mandates set forth in Practice Book § 44-3.[5]

I

I turn first to whether the defendant's request for self-representation was unequivocal *and therefore sufficient to warrant a proper waiver hearing.* The sixth amendment to the United States constitution guarantees not just the right to counsel but also the right to represent oneself. *Faretta* v. *California,* 422 U.S. 806, 835–36, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Although I agree that the assertion of the right to self-representation must be clear and unequivocal, it is evident from

---

[5] Practice Book § 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

the record that the trial court thought that the defendant adequately enough expressed that choice because the court clearly and unequivocally denied the request on March 18, 2003, and two days later confirmed on the record that it had denied his earlier request "to represent [him]self . . . ."

That colloquy began when the defendant asked the court, "excuse me Your Honor, don't I have the right to finish this case . . . without [defense counsel]?" The court responded: "In a word, no." At the end of this colloquy, which began with the defendant's inquiry about whether he had the right of self-representation, the court stated: "So, if you're making a request of me that you be allowed to represent yourself or that you be allowed to retain or have new counsel appointed for you, that request is denied."[6]

Furthermore, on appeal, the state once conceded the facts surrounding the defendant's self-representation request and the court's ruling thereon. When the state filed its objection to the defendant's motion for articulation, it conceded: "Contrary to the defendant's contention, the record, including all inferences reasonably

---

[6] The state now argues on appeal that the defendant's request was not clear and unequivocal, to which the defendant responds, in essence, that once the court recognized that he was asserting his right of self-representation, to require him to be punctilious or to recite some talismanic phrase would be an elevation of form over substance. At oral argument, the defendant's counsel further explained this position: "In all of the cases that I've researched . . . where there is a claim by a defendant that he was denied his right to represent himself, and the issue [on appeal] is whether there was a clear and unambiguous request—there was no ruling by the trial court. And so, what we're left with is, did the trial court fail to acknowledge and recognize a clear and unambiguous request? In which case, it would have been error not to address it. In this case, [however] I'm now being asked to show that there was a clear and unequivocal request where a trial court ruled. And I don't—I don't know how I go about doing that, Your Honor. I now have to say, even though the trial court ruled, we're now going to say that it was a—it was an ambiguous request. Even though the trial court understood it." I find the defendant's argument compelling.

drawn therefrom, provides both the factual criteria considered by the trial court in denying the defendant's motion to waive counsel and proceed pro se, and the factual findings made by the trial [court] in denying the motion." Arguably, at least in part on the basis of that concession, this court, although granting the defendant's motion for review of the trial court's denial of his motion for articulation, denied his request that we order the trial court to articulate the basis for its denial of the defendant's request to represent himself.[7] See Practice Book §§ 66-5 and 66-7.

## A

I first disagree with the majority's holding that the defendant's request was equivocal and that the trial court was not required to conduct an inquiry on his request to represent himself, citing *State* v. *Carter*, 200 Conn. 607, 513 A.2d 47 (1986), as authority. On appeal, it is not our function to make factual findings; rather, we give a trial court's findings of fact complete deference unless they are clearly erroneous in light of the "whole record." *State* v. *Reagan*, 209 Conn. 1, 8, 546 A.2d 839 (1988).

Although the majority concludes that the colloquy between the defendant and the court did not amount to a clear and unambiguous request for self-representation, the trial court was present when the defendant made his request, and it participated in the proceedings, listening to the defendant and observing his demeanor. In contrast, on appeal, we have nothing but the cold record. Whatever others might say about the initial dialogue, it is unquestionable that the court viewed this

---

[7] Specifically, the defendant requested that we order the trial court to articulate (1) the legal standard of review that it applied when it denied the defendant's motion to waive counsel and to proceed pro se and (2) the facts that it found relevant to its decision to deny the defendant's motion to waive counsel.

request as one of self-representation, and it clearly articulated its position. On appeal, all that is ascertainable from the record is that on the basis of whatever the defendant said and did, the court realized and acknowledged that the defendant was asserting his right of self-representation, and it denied the request. Once the court made its finding and ruled on that basis, specifically telling the defendant that he had no right to represent himself, there was no reason for the defendant to have attempted to say more. The court had ruled.

The majority would have us ignore the court's statement made on the record two days after the defendant first made the request to represent himself. In that statement, the court very clearly reaffirmed that it had denied the defendant's request to represent himself.[8]

---

[8] On March 20, 2003, the following discussion occurred:

"The Court: . . . . Before we bring [an alternate juror] in, I wanted to put something on the record and get counsel's view. But I do want to ask you, [defense counsel], I asked you yesterday if you would confer with [the defendant] on the issue of whether or not it's necessary for the court to reverse its previous ruling about no shackles. I asked him to do that, Mr. Flanagan, because I know you [were] angry and disappointed the other day at the turn things took about resting *and my not permitting you to represent yourself.* But I asked [defense counsel] to find out from you whether I could continue to have your assurance that there wouldn't be any need for me to be concerned about having shackles on you during the court proceedings today. . . ."

\* \* \*

"The Court: So, Mr. Flanagan, do I continue to have your assurance, sir, that my continuing to leave the shackles off is not going to cause any problems for either the court staff or anybody else in the courtroom?

"[The Defendant]: Yes. Not from me." (Emphasis added.)

After the conclusion of a brief discussion with the alternate juror, defense counsel stated that the defendant wanted to address the court and to put something on the record, which the court allowed:

"[The Defendant]: I just want to put it on the record that I wanted to call witnesses and that I feel that this is being done against my will, and it's not what I want." The court then responded: "All right. The record will reflect that, sir."

I also note that there is no transcript of the conversation that the court stated it had with defense counsel regarding the defendant's demeanor after not being allowed to represent himself. Accordingly, I assume that the conversation was off the record.

That statement on the record effectively amounted to an articulation, and it conclusively demonstrated that the court understood that the defendant had made such a request and that it had denied the request. Although this statement was made two days after the court's ruling, it is entitled to no less deference on appeal, where there has been no showing or claim that the finding was clearly erroneous, than an explanation or articulation that is offered months later. On appeal, appellate courts often look to articulations of the trial court to determine the factual basis for a ruling months or even a year earlier. See Practice Book §§ 60-5, 66-5 and 66-7. Further, I note that "[t]he purpose of an articulation is to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Pecan* v. *Madigan*, 97 Conn. App. 617, 623, 905 A.2d 710 (2006), cert. denied, 281 Conn. 919, 918 A.2d 271 (2007). "[A]n articulation is simply an explanation of a previous order or ruling." *Rathblott* v. *Rathblott*, 79 Conn. App. 812, 820, 832 A.2d 90 (2003). An explanation offered by a court a mere two days after it has issued a ruling should not be ignored any more than an articulation offered months or even one year after a ruling.

In concluding that the defendant's self-representation request was equivocal, the majority, for the first time on appeal, makes a finding that was not made by the trial court, and it does so citing the authority of *State* v. *Carter*, supra, 200 Conn. 607.[9] However, that thoughtful

---

[9] I disagree with the majority's conclusion that the present case is "particularly similar" to *United States* v. *Light*, 406 F.3d 995, 999 (8th Cir. 2005), where the defendant asked the court what was the rule on self-representation, and the court told the defendant that he had the option of representing himself but went on to explain the negatives of self-representation. In the present case, the court expressly and improperly told the defendant that he did not have a right of self-representation. In my opinion, these cases are not "particularly similar."

decision is inapposite to the present case for several reasons. The defendant in *Carter* made several requests to change his attorney and, although he stated that he would "have to represent [him]self"; id., 611; the court never recognized that he was asserting a right of self-representation, and, accordingly, it did not issue a ruling, as did the court in the present case.[10] See id., 614–

[10] Compare *United States ex rel. Maldonado* v. *Denno*, 348 F.2d 12, 14–15 n.1 (2d Cir. 1965), cert. denied sub nom. *DiBlasi* v. *McMann*, 384 U.S. 1007, 86 S. Ct. 1950, 16 L. Ed. 2d 1020 (1966), in which the United States Court of Appeals for the Second Circuit concluded that the trial court improperly had restricted a defendant's right of self-representation on the basis of the following colloquy:

"Defendant Maldonado: Your Honor, I would like to say thank you for assigning a lawyer, but I don't feel that this man is interested in my case, and I would like to be assigned someone else.

"The Court: How long have you had this lawyer?

"Defendant Maldonado: I have had him since eight, ten minutes ago, sir.

"The Court: Eight or ten minutes ago?

"Defendant Maldonado: Yes, sir.

"The Court: You mean you have never seen this lawyer before?

"Defendant Maldonado: I don't recall.

"The Court: Don't tell me you don't recall. Have you seen him? Yes or no.

"Defendant Maldonado: I think so.

"The Court: What do you mean, you think so? Have you discussed it with him before?

"Defendant Maldonado: I don't remember, sir.

"The Court: Yes or no. Have you discussed this case with him before? Don't jockey with me, mister.

"Defendant DiBlasi: May I say something? He was my lawyer when my co-defendant was out on bail at the time, and he had a different lawyer.

"The Court: Did you ever discuss it with this lawyer before?

"Defendant Maldonado: I don't remember, sir.

"The Court: Do you have any money to hire a lawyer?

"Defendant Maldonado: No, your Honor.

"The Court: Then what do you suggest the Court do?

"Defendant Maldonado: Assign me someone—

"The Court: How do you come to the conclusion that you don't want this lawyer?

"Defendant Maldonado: I just feel that—

"The Court: And do you come to the conclusion just as we are ready to pick a jury?

"Defendant Maldonado: Yes.

"The Court: Application denied. This is your lawyer.

\* \* \*

"Defendant Maldonado: Your Honor, I don't feel that this man, in eight or ten minutes, can defend me. I am facing a lot of time.

15.[11] The question on appeal in *Carter* was whether the court had an "independent obligation to inquire into the defendant's interest in representing himself . . . ." Id., 613. In contrast, the trial court in this case knew that the defendant was interested in representing himself and denied this request without conducting a waiver hearing, as *Carter* requires once an unequivocal request is made. See id., 613 n.9. Unlike the trial court in *Carter*, the trial court in this case recognized that the defendant was asserting his right, and it acted by denying the request. A waiver hearing based on the proper standard should have followed this request, before the court issued a ruling.

## B

In passing on whether the defendant should have been permitted to represent himself, the record reveals that the court applied an *exceptional circumstances*

---

"The Court: All right, mister, you have had your say. Sit down. We are trying this case.

"Defendant Maldonado: Your Honor, if I feel that the case must go on, I want to be able to act as my own attorney. Would you give me that permission, sir?

"The Court: No, No. You sit down, mister. You have got a lawyer, a good lawyer, and he is going to try your case. Now sit down."

[11] The briefs in *Carter* reveal that a public defender was appointed to represent the defendant on November 29, 1983, and, on January 4, 1984, the defendant requested new counsel. This request was denied. On September 7, 1984, the defendant again requested that new counsel be appointed because "the people in the corporation [were] bringing a set of force to give false evidence . . . ." Counsel explained to the court that the defendant suffered from paranoia, and the court told the defendant that this attorney would continue to represent him. On September 11, 1984, the defendant, again, requested a new attorney because he believed that his attorney was assisting the prosecution. On September 12, 1984, the defendant told the court that he wanted a new attorney because his attorney was engaging in misconduct. At this time, the court told the defendant to sit down because trial was about to begin. The defendant then stated that he would have to represent himself; the court, thereafter, told the defendant to be seated and that his attorney was going to continue his representation. See *State v. Carter*, Conn. Supreme Court Records & Briefs, June Term, 1986, Pt. 2, Defendant's Brief pp. 28–30 and State's Brief pp. 11–13, 18 n.21.

test when denying the defendant's request. Specifically, the court stated: "The fact that you disagree with [your attorney] over trial tactics . . . at this stage of the case where the state is about to rest, after we have been on trial essentially for about two and one-half months, does not constitute the kind of exceptional circumstances that I would have to find in order for me to allow you either to have a new lawyer or to represent yourself at this point in time."[12] I conclude that this is not the proper test.

Certain additional facts bear on this issue. First, there is nothing in the record before us to indicate that the request of the defendant to represent himself would cause inordinate delay or that it was made as part of a pattern of disruptive or tumultuous conduct. Second, the request was made at the end of the state's case because the defendant wanted to call one witness on his behalf and his attorney absolutely refused to do so. Third, the state had taken two and one-half months to call twenty-eight witnesses on its behalf before resting; the defendant had called none. An exceptional circumstances test employed by the court would require the defendant to show some exceptional circumstances to utilize the right to represent himself once trial begins. I do not believe this to be the proper test.

Our Supreme Court often has discussed the utilization of an exceptional circumstances test when a defendant seeks to discharge counsel and have *new counsel* appointed, especially on the eve of trial or midtrial. The Supreme Court has "distinguish[ed] between a substantial and timely request for new counsel pursued in good faith, and one made for insufficient cause on the eve or in the middle of trial. . . . [It has explained that] [t]here is no unlimited opportunity to obtain alternate

---

[12] The majority does not address why the court employed any type of test in this case.

counsel. . . . It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel. . . . A request for substitution of counsel requires support by a substantial reason, and may not be used to achieve delay. . . . A defendant has no unbridled right to discharge counsel on the eve of trial. . . . In order to work a delay by a last minute discharge of counsel there must exist exceptional circumstances." (Citations omitted; internal quotation marks omitted.) *State* v. *Drakeford*, 202 Conn. 75, 82–84, 519 A.2d 1194 (1987).

Frequently, when a court has found no exceptional circumstances to warrant the discharge of counsel and the appointment of substitute counsel, however, it has offered the defendant the option of exercising the right of self-representation. See, e.g., *State* v. *Webb*, 238 Conn. 389, 425–26, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448 (no exceptional circumstances warranting appointment of substitute counsel but defendant permitted to proceed pro se with standby counsel), cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000); *State* v. *Calderon*, 82 Conn. App. 315, 319–21, 844 A.2d 866 (no exceptional circumstances warranting continuation of trial to hire new counsel but defendant allowed to discharge counsel and proceed pro se), cert. denied, 270 Conn. 905, 853 A.2d 523, cert. denied, 543 U.S. 982, 125 S. Ct. 487, 160 L. Ed. 2d 361 (2004); *State* v. *Miller*, 69 Conn. App. 597, 612–13 n.4, 795 A.2d 611 (no exceptional circumstances allowing appointment of substitute counsel but defendant offered option of proceeding pro se), cert. denied, 260 Conn. 939, 802 A.2d 91 (2002); *State* v. *Fisher*, 57 Conn. App. 371, 381–82, 748 A.2d 377 (same), cert. denied, 253 Conn. 914, 754 A.2d 163 (2000); *State* v. *Charles*, 56 Conn. App. 722, 726, 745 A.2d 842 (no exceptional circumstances for appointing new counsel but defendant given choice of continuing with appointed counsel

or proceeding pro se), cert. denied, 252 Conn. 954, 749 A.2d 1203 (2000). On the basis of this case law, I conclude that the exceptional circumstances test, which is employed for lawyer substitutions, is inapplicable where, as here, the defendant seeks to discharge counsel and proceed pro se.

Even if I were to agree with the majority that this case should be determined under federal law, the court did not follow the proper federal test as articulated in many cases decided by the United States Court of Appeals for the Second Circuit construing the right of self-representation under the federal constitution. I find such cases informative.

Concerning the exercise of one's right of self-representation after trial has commenced, the Second Circuit has explained that a balancing test is to be used. " 'Once . . . trial has begun with the defendant represented by counsel . . . his right thereafter to discharge his [lawyer], and to represent himself is sharply curtailed. There must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to the trial judge's assessment of this balance.' [*United States ex rel. Maldonado* v. *Denno*, 348 F.2d 12, 15 (2d Cir. 1965), cert. denied sub nom. *DiBlasi* v. *McMann*, 384 U.S. 1007, 86 S. Ct. 1950, 16 L. Ed. 2d 1020 (1966)]. The . . . [United States] Supreme Court decision, *Faretta* v. *California*, [supra, 422 U.S. 806], casts no pall on [the] *Maldonado* ruling. *Faretta* [did] not involve motions made after the commencement of trial and in that decision the Court cited (without disapproval) *Maldonado* which does. *Faretta*, supra, [817]. . . . Subsequent application of its rule indicates that the reason for the request, the quality of the counsel representing the party, and the party's prior proclivity to substitute counsel are all appropriate criteria to be factored into the balance. See, *United States*

v. *Catino*, 403 F.2d 491, 497–98 (2d Cir. 1968), cert. denied [sub nom. *Pagano* v. *United States*], 394 U.S. 1003, 89 S. Ct. 1598, 22 L. Ed. 2d 780 (1969); *United States* v. *Ellenbogen*, 365 F.2d 982, 988–89 (2d Cir. 1966), cert. denied, 386 U.S. 923, 87 S. Ct. 892, 17 L. Ed. 2d 795 (1967)." *Sapienza* v. *Vincent*, 534 F.2d 1007, 1010 (2d Cir. 1976) (affirming District Court's denial of request to proceed pro se because defendant's "public defender was competent . . . [the defendant] was obstinate, and the ill-timed request followed a torrent of abortive counsel substitutions").

In *United States* v. *Matsushita*, 794 F.2d 46 (2d Cir. 1986), the court reaffirmed that in assessing an untimely request to proceed pro se, the "prejudice to the legitimate interests of the defendant must be balanced against the potential disruption of the proceedings in progress." Id., 51 (affirming trial court's exercise of discretion in denying request to proceed pro se because of defendant's propensity to substitute counsel, to delay trial and to use disruptive tactics); see also *Williams* v. *Bartlett*, 44 F.3d 95, 99 n.1 (2d Cir. 1994) ("After trial has begun, a trial court faced with [a request to proceed pro se] must balance the legitimate interests of the defendant in self-representation against the potential disruption of the proceedings already in progress. . . . In exercising this discretion, the appropriate criteria for a trial judge to consider are the defendant's reasons for the self-representation request, the quality of counsel representing the party, and the party's prior proclivity to substitute counsel." [Citations omitted.]); *United States* v. *Brown*, 744 F.2d 905, 908 (2d Cir.) (trial court did not abuse its discretion in denying right of self-representation where court reasonably concluded that counsel's representation was adequate and defendant's self-representation "would have been disruptive of the trial process"), cert. denied, 469 U.S. 1089, 105 S. Ct. 599, 83 L. Ed. 2d 708 (1984).

In the present case, the court recognized that the defendant was asserting the right of self-representation and firmly informed him that he had no right to represent himself and then denied his request. The court, however, conducted no balancing test before ruling on the request, but, rather, it focused solely on its opinion that the performance of the defendant's attorney was "beyond competent and . . . superior." Although this is one of the criteria to be balanced under the federal test when a defendant makes a request to proceed pro se after the start of trial, it is only one of several factors that must be balanced against the legitimate interests of the defendant in representing himself. See *Williams* v. *Bartlett,* supra, 44 F.3d 99 n.1; *Sapienza* v. *Vincent,* supra, 534 F.2d 1010; *United States ex rel. Maldonado* v. *Denno,* supra, 348 F.2d 15. There is no indication in the record that the defendant sought to delay or disrupt the trial or that he had a proclivity to substitute counsel. If anything, the record supports a conclusion that the defendant had a very legitimate reason for wanting to represent himself at the close of the state's case; he wanted to put on a defense by calling a witness on his behalf.

The United States Supreme Court in *Faretta* very eloquently expressed the importance of the right of self-representation and the defendant's right to put forth a defense: "The right of self-representation finds support in the structure of the Sixth Amendment, as well as in the English and colonial jurisprudence from which the Amendment emerged. . . . The Sixth Amendment includes a compact statement of the rights necessary to a full defense: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his [defense].' Because these rights

are basic to our adversary system of criminal justice, they are part of the 'due process of law' that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States. The rights to notice, confrontation, and compulsory process, when taken together, guarantee that a criminal charge may be answered in a manner now considered fundamental to the fair administration of American justice—through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence. In short, the Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it. . . .

"The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally— thus, is implied necessarily by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

"The counsel provision supplements this design. It speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such

a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. . . . This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense." (Citations omitted; emphasis in original.) *Faretta* v. *California,* supra, 422 U.S. 818–21.

Because the defendant was denied the fundamental right of self-representation without any attempt by the court to conduct a balancing of the very legitimate interests of the defendant in self-representation, as so eloquently expressed in *Faretta,* against the potential disruption of the proceedings already in progress, I would reverse the defendant's conviction and remand the case for a new trial.

## II

As stated in part I B of this dissent, there is nothing in the record that would indicate that the defendant was disruptive or tumultuous or that granting his request would cause an inordinate delay. Additionally, as stated earlier, the defendant articulated a very good reason for wanting to proceed pro se immediately after the state rested; he wanted to put on a defense by calling a witness on his behalf after his attorney refused to do so. Therefore, the only criteria of the balancing test to be weighed would be the issue of timeliness. On this issue, the defendant asked that, rather than looking

to federal law, we look to Practice Book § 44-3,[13] which provides in relevant part that "[a] defendant . . . shall be permitted to represent himself or herself at *any stage of the proceedings* . . . ." (Emphasis added.) The state argues that we should adopt a per se rule that any request for self-representation made after the start of trial is untimely. I would honor the defendant's request and analyze the issue of timeliness under our rules of practice, which are not irrelevant and which provide that a defendant "shall be permitted to represent himself or herself at any stage of the proceedings . . . ." Practice Book § 44-3.

The Court of Appeals of Maryland in *Snead* v. *State*, 286 Md. 122, 406 A.2d 98 (1979), was called on to interpret a rule of practice that, at the time, was similar to § 44-3 in that it "implement[ed] the constitutional mandates for waiver of counsel" and provided that an inquiry was to be made "[w]hen a defendant indicat[ed] a desire or inclination to waive counsel." (Internal quotation marks omitted.) Id., 130. The Maryland court explained: "An effective waiver of counsel is to be determined under Rule 723 and that Rule contains no provision as to the time an indication of a desire or inclination to waive counsel must be made."[14] Id, 132. In *Snead,*

---

[13] The state urges that the defendant did not brief adequately a state constitutional claim. Because our Supreme Court specifically has ruled that Practice Book § 44-3 "and the constitutional requirements for permitting a defendant to waive his right to counsel and, thereby, assert his constitutional right to represent himself, are synonymous"; *State* v. *Wolff*, 237 Conn. 633, 653–54, 678 A.2d 1369 (1996); I believe that the denial of the defendant's request to brief the applicability of the state constitution contained in his request for reargument en banc was denied improvidently by this court. It seems counterintuitive to interpret a rule of practice that is synonymous with a constitutional right without benefit of analysis under our state constitution.

[14] See also *State* v. *Brown*, 342 Md. 404, 676 A.2d 513 (1996), decided seventeen years after *Snead*, which explained that the mandates of Maryland Rule 4-215, formerly Rule 723 and Rule 719, had been changed over the years. Specifically, the court explained that Rule 4-215 formerly had an *"at any stage of the proceedings"* provision similar to that of our own Practice Book § 44-3. In *Brown*, the court explained that "[t]he original rule regarding waiver of the right to counsel was Rule 719, which stated that: 'If, *at any*

the Maryland court reversed the judgment of conviction and ordered a new trial because the trial court had not conducted an inquiry after the defendant had indicated a desire to proceed pro se. Id., 132. The court held that such a failure never could be harmless: "The State would have us hold that if the refusal to permit [the defendant] to proceed without counsel was error, the error was harmless. As we have indicated, we do not reach the merits of the issue whether the refusal to permit [the defendant] to proceed without counsel was error because the foundation necessary for a ruling thereon was not laid, and it was the failure to lay the foundation by appropriate inquiry that necessitates reversal of the judgments. It is manifest that the failure to conduct a properly invoked inquiry, which is necessary for a resolution of whether an accused is entitled to the right to proceed *pro se*, may not in any event be harmless." (Emphasis in original.) Id. Similarly, on the basis of the clear language set forth in Practice Book § 44-3, I would conclude that there is no time requirement and that, therefore, the defendant's request was not untimely.

For all of these reasons, I would reverse the judgment of conviction and remand the case for a new trial.

Accordingly, I respectfully dissent.

---

*stage of the proceeding*, an accused indicates a desire or inclination to waive representation, the court shall . . . .' Rule 719 was amended and renumbered at Rule 723; Rule 723 was subsequently redesignated as Rule 3-305, and later as Rule 4-215. . . . The current rule, 4-215, omits the 'at any stage of the proceedings' language from the original rule. By omitting this phrase, it is clear to us that the procedural requirements of 4-215 were not intended to apply in every situation where a defendant waived counsel. The focus of the Rule was progressively narrowed to concentrate on early-stage decisions to dismiss counsel." (Citation omitted; emphasis in original.) *State* v. *Brown*, supra, 427. I note that the rule contained in Practice Book § 44-3 has not been narrowed.

ROGERS, J., with whom DiPENTIMA and McLACH-LAN, Js., join, dissenting. I respectfully disagree with the conclusion of the majority that the trial court's failure to canvass the defendant, Maurice Flanagan, pursuant to Practice Book § 44-3 was proper because the defendant did not clearly and unequivocally assert his right to self-representation. For the reasons more fully explained by Chief Judge Flynn in part I A of his dissent, I believe it is incongruous for this court to conclude that the defendant did not invoke that right effectively enough even though the trial court recognized, and ruled on, the defendant's request to represent himself for the remainder of the proceedings.[1] Regardless of whether the defendant's request, standing alone, may be characterized by an appellate tribunal reviewing a cold record as ambiguous or equivocal, the fact that the trial judge, who had the opportunity to observe and interact with the defendant firsthand over the course of several days, acknowledged and addressed that request compels the conclusion that the request was communicated adequately. Moreover, the defendant cannot be faulted for declining to pursue his request more vigorously after the trial court informed him, in response to his initial query, that he did not have the right to continue without counsel.[2]

---

[1] In my view, the majority's characterization of the trial court as having made an "implicit" factual finding that the defendant's request was not clear and unequivocal is questionable. To the extent it may be assumed that the court made an implicit factual finding as to the clarity of the defendant's request, it is at least equally plausible to assume that the court found that request clear, given that the court issued a ruling in response. Indeed, the difficulty with "implicit" factual findings is that their content often is difficult to discern. I note that the court gave an *explicit* reason for denying the defendant's request, namely, that the requisite "exceptional circumstances" were lacking and not that the request was equivocal.

[2] On this point, I agree with Chief Judge Flynn that this case is not "particularly similar" to *United States* v. *Light*, 406 F.3d 995 (8th Cir. 2005), as the majority asserts. In *Light*, the United States District Court, in response to a defendant's question about the rule on self-representation, explained, inter alia, that the defendant had the option of proceeding pro se. Id., 999. In contrast, the court here, by stating, "In a word, no," indicated to the defen-

Once the court recognized that the defendant was asserting the right to represent himself, the court, given the late stage of the proceedings, had the discretion to deny the request but acted improperly in doing so summarily and pursuant to an "exceptional circumstances" test. As explained by Chief Judge Flynn in part I B of his dissent, that test applies to untimely requests for new counsel and not to requests to proceed pro se. In the case of a defendant's request to represent himself after trial already has commenced, the proper inquiry is to conduct the balancing test developed in case law establishing the contours of the right to self-representation under the federal constitution. Stated succinctly, "[a]fter trial has begun, a trial court faced with [a request to proceed pro se] must balance the legitimate interests of the defendant in self-representation against the potential disruption of the proceedings already in progress. . . . In exercising this discretion, the appropriate criteria for a trial judge to consider are the defendant's reasons for the self-representation request, the quality of counsel representing the party, and the party's prior proclivity to substitute counsel."[3] (Citation omitted.)

dant that he did *not* have the option of self-representation. The majority characterizes this response as imprecise; I believe it is more aptly described as inaccurate.

[3] Apparently, this federal constitutional inquiry has yet to be adopted formally by Connecticut's appellate courts, and it also has not been endorsed explicitly by the United States Supreme Court. Our Supreme Court has acknowledged, however, that the United States Supreme Court, in deciding *Faretta* v. *California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the case first recognizing the right to self-representation under the federal constitution, intimated that that right was not without limits. Specifically, our Supreme Court observed that the United States Supreme Court in *Faretta* "suggested three grounds for denying a defendant his right to self-representation: (1) he makes the request in untimely fashion such that granting it would disrupt the proceedings; id., 807; (2) the defendant engages in serious obstructionist misconduct; id., 834 n.46; and (3) the defendant has not knowingly and intelligently waived his right to counsel. Id., 835; see 2 W. LaFave & J. Israel, Criminal Procedure (1984) § 11.5 (d), pp. 47–49." (Internal quotation marks omitted.) *State* v. *Townsend*, 211 Conn. 215, 221 n.4, 558 A.2d 669 (1989). I note that the first two grounds correspond with aspects of the federal balancing test; the third ground is the proper focus of a § 44-3 inquiry.

*Williams* v. *Bartlett*, 44 F.3d 95, 99–100 n.1 (2d Cir. 1994). If, after consideration of these factors, the court determines that the balance tips in favor of the defendant's interests in self-representation, it then should proceed to canvass the defendant in accordance with § 44-3 to ensure that the defendant's choice to proceed without counsel has been made in a knowing and intelligent fashion.[4]

I part company with Chief Judge Flynn at part II of his dissent. In particular, I disagree that the portion of § 44-3 providing that a defendant shall be permitted to represent himself "at any stage of the proceedings" operates to eliminate considerations of timeliness from the court's assessment of whether a particular defendant should be permitted to proceed pro se. To interpret the rule in that manner amounts to holding that a rule of practice enlarges the substantive right of self-representation beyond its bounds as currently established by the text of the relevant constitutional provisions[5] and the cases interpreting them. I believe such an interpretation is untenable.

General Statutes § 51-14 (a) authorizes the judges of the Superior Court to promulgate rules "regulating pleading, practice and procedure in judicial proceedings" but provides further that "[s]uch rules shall not abridge, *enlarge* or modify *any substantive right* . . . ." (Emphasis added.) Our Supreme Court repeatedly has explained: "[T]he courts lack the power to promulgate rules governing substantive rights and remedies. . . . [T]he court rules themselves are expressly

---

[4] Conversely, if the court's discretionary assessment of the balancing test factors weighs against the defendant's interest in self-representation, the defendant's request should be denied. In this circumstance, a canvass pursuant to § 44-3 would be unnecessary.

[5] See U.S. Const., amend. VI; Conn. Const., art. I, § 8. Neither provision states that a right to self-representation applies at any stage of criminal proceedings.

limited in scope to practice and procedure in the Superior Court; Practice Book § [1-1]; and do not purport to reach beyond such limits." (Citation omitted; internal quotation marks omitted.) *In re Samantha C.*, 268 Conn. 614, 639, 847 A.2d 883 (2004); see also *Pesino* v. *Atlantic Bank of New York*, 244 Conn. 85, 85 n.1, 709 A.2d 540 (1998); *State* v. *King*, 187 Conn. 292, 297, 445 A.2d 901 (1982). In regard to § 44-3 specifically, our Supreme Court has made clear that the rule "and the constitutional requirements for permitting a defendant to waive his right to counsel and, thereby, assert his constitutional right to represent himself, are synonymous." *State* v. *Wolff*, 237 Conn. 633, 653–54, 678 A.2d 1369 (1996); see also *State* v. *D'Antonio*, 274 Conn. 658, 710, 877 A.2d 696 (2005) ("the provisions of [§ 44-3] cannot be construed to require anything more than is constitutionally mandated" [internal quotation marks omitted]). Indeed, this court previously has been faulted for basing a "conclusion on the effect of [Practice Book] § 961 (3) [now § 44-3 (3)] solely as a mandatory rule of practice, *apart from its constitutional underpinnings . . . .*" (Emphasis added.) *State* v. *Wolff*, supra, 653–54.

Accordingly, we are obligated to interpret § 44-3 so as not to enlarge the right to self-representation but, rather, to mirror its scope as established by the jurisprudence concerning that right. Because I am unaware of any controlling case law interpreting either our state or federal constitution to provide for a right of self-representation unfettered by any consideration of when it is asserted, I would conclude that the portion of § 44-3 allowing for exercise of the right *at any stage of the proceedings* cannot be interpreted literally.[6] Instead, I

[6] I emphasize that I do not intend in this matter to express any opinion as to the scope of the right to self-representation under the state constitution but merely to observe that no decision to date has construed that right as having no timeliness limitations. Although it is conceivable that in the future, the state constitutional right may be held to be broader than the federal one in regard to timeliness, § 44-3 cannot be read, at this time, as effectuating an aspect of the state constitutional right that has yet to be recognized.

would construe the rule consistently with the federal case law holding that the right, if asserted after the commencement of trial, "is sharply curtailed"; (internal quotation marks omitted) *Sapienza* v. *Vincent*, 534 F.2d 1007, 1010 (2d Cir. 1976); in other words, that timeliness is an appropriate consideration for a court in determining whether exercise of the right ought to be permitted. For the foregoing reasons, I respectfully dissent.