### STATE OF CONNECTICUT *v.* JAMES CUMMINGS
### (AC 21730)

### STATE OF CONNECTICUT *v.* JUAN SANTIAGO
### (AC 21731)

### STATE OF CONNECTICUT *v.* MAURICE FLANAGAN
### (AC 21732)

Lavery, C. J., and Flynn and McDonald, Js.

Argued December 4, 2001—officially released January 29, 2002

*James B. Streeto*, deputy assistant public defender, for the appellant (defendant James Cummings).

*Damon A. R. Kirschbaum*, special public defender, for the appellant (defendant Juan Santiago).

*Felix Esposito*, special public defender, for the appellant (defendant Maurice Flanagan).

*Robert M. Spector*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *Herbert E. Carlson, Jr.*, and *Stephen G. Preleski*, supervisory assistant state's attorneys, and *John Russotto*, assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. Three of five codefendants, James Cummings, Juan Santiago and Maurice Flanagan, appeal from the judgments of conviction rendered after a joint jury trial.[1] On appeal, each codefendant claims, inter alia, that the court violated General Statutes (Rev. to 1999) § 54-82h (c) when it substituted an alternate juror for a regular juror after deliberations had begun and, therefore, his judgment of conviction must be reversed. We reverse the judgments of conviction and remand the cases for new trials.

The following facts and procedural history are relevant to our resolution of the defendants' appeals. In connection with the killing of two members of the Latin Kings street gang on May 14, 1994, in New Britain, the codefendants[2] and four others, all of whom were

---

[1] The two remaining codefendants, Reynaldo Arroyo and Larry Gadlin, were acquitted of all charges.

[2] Hereinafter, the five codefendants will be referred to collectively as "the codefendants."

members of the Los Solidos street gang, were arrested. The state charged each of the codefendants with the following crimes: (1) two counts of murder in violation of General Statutes §§ 53a-8 and 53a-54a; (2) two counts of attempt to commit murder in violation of General Statutes §§ 53a-54a (a), 53a-8 and 53a-49 (a); (3) one count of conspiracy to commit murder in violation of General Statutes §§ 53a-54a and 53a-48; (4) one count of capital felony in violation of General Statutes §§ 53a-54b and 53a-8; and (5) one count of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-48 (a). Jury selection commenced on October 27, 1998, and evidence began on January 5, 1999.

Following closing arguments, the court, on March 4, 1999, instructed the jury and then excused the twelve regular jurors from the courtroom, directing them to begin deliberating. Immediately thereafter, the court dismissed the two alternate jurors. When doing so, the court advised the alternate jurors that "there may or may not come a time when you get a phone call saying come on down, we need you to come in." The court also cautioned the alternate jurors "not to discuss the case with anyone until you know there is a verdict."

Later that same day, the court received a note from one of the regular jurors, juror A, and, in response, summoned her to the courtroom for questioning. On the basis of the information that juror A provided during her questioning, the state and the attorneys for the codefendants agreed that she should be dismissed. Cummings' defense counsel stated to the court: "I would like to let you know that we are in agreement that she should be excused and that an alternate should be chosen in her stead . . . ." The state responded, "We agree that she should go at this point," and suggested that the court either could substitute an alternate juror for juror A or, if the parties agreed, proceed with

an eleven person jury. The court dismissed juror A from the jury and randomly selected one of the alternate jurors, juror F, to replace her. It also requested and received confirmation from the parties that none of them had an objection to recalling one of the alternate jurors.

The next day, another regular juror, juror P, telephoned the court and stated that he was ill with "a very serious stomach problem" and could not attend court because he was at his physician's office. After questioning alternate juror F, whom the court randomly had selected to replace juror A, the court excused the jury until the following day. On March 8, 1999, the court, after hearing no objection, decided to recall the remaining alternate juror, juror E, as a replacement for juror P, who remained unavailable. The court questioned juror E and, later, the clerk swore in jurors F and E as regular jurors. The jury deliberated for four days before returning the following verdict: Cummings, Santiago and Flanagan each were guilty of two counts of murder, two counts of attempt to commit murder, one count of conspiracy to commit murder and one count of conspiracy to commit assault in the first degree, and each were not guilty of capital felony. Two other codefendants, Reynaldo Arroyo and Larry Gadlin, both were found not guilty as to all counts. The court rendered judgments in accordance with the verdicts. On March 14, 1999, the court sentenced Cummings, Santiago and Flanagan each to a total effective term 140 years imprisonment. These appeals followed.

The state concedes that our Supreme Court's decision in *State* v. *Murray*, 254 Conn. 472, 757 A.2d 578 (2000) (en banc), controls and, therefore, Cummings, Santiago and Flanagan are entitled to new trials. "In *Murray*, [our Supreme Court] held that General Statutes (Rev.

to 1999) § 54-82h (c)[3] requires a trial court to dismiss alternate jurors once deliberations have begun, and prohibits the trial court from substituting dismissed alternate jurors mid-deliberation." *State* v. *Figueroa*, 257 Conn. 192, 195, 777 A.2d 587 (2001), citing *State* v. *Murray*, supra, 496. The *Murray* court held that "an alternate, discharged from service when the case was submitted for deliberation to the jury, lost her status as a juror" and "was no longer qualified to participate in the remainder of the proceedings." *State* v. *Murray*, supra, 498. Also, the *Murray* court held that "the inclusion of a nonjuror among the ultimate arbiters of innocence or guilt necessarily amounts to a [defect] in the structure of the trial mechanism that defies harmless error review." (Internal quotation marks omitted.) Id.

The present appeals are controlled by the 1999 revision of § 54-82h (c)[4] because the underlying trial occurred in 1999.[5] In light of the procedural history of that trial, specifically, the inclusion of two nonjurors in the jury, we reverse the judgments of conviction and remand the cases for a new trial. We need not address the remaining claims raised by Cummings, Santiago and Flanagan, as they do not challenge the sufficiency of the evidence. Cf. id., 478.

The judgments are reversed and the cases are remanded for new trials.

---

[3] General Statutes (Rev. to 1999) § 54-82h (c) provides in relevant part: "A juror who has been selected to serve as an alternate shall not be segregated from the regular panel except when the case is given to the regular panel for deliberation at which time he shall be dismissed from further service on said case."

[4] See footnote 3.

[5] We note that several weeks after our Supreme Court released the *Murray* decision, General Statutes § 54-82h (c) was amended, effective October 1, 2000. See Public Acts 2000, No. 00-116, §§ 6, 7. Under that amendment, which does not apply to the present cases, a court no longer is prohibited by statute from substituting an alternate juror for a regular juror after the jury has begun deliberating.