STATE OF CONNECTICUT *v.* MAURICE FLANAGAN
(AC 33062)

Lavine, Keller and Sullivan, Js.

Argued October 11—officially released December 24, 2013

*Neal Cone*, senior assistant public defender, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Kevin J. Murphy*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. In accordance with a remand order from our Supreme Court, the trial court determined that the defendant, Maurice Flanagan, was not entitled to a canvass under Practice Book § 44-3 following the assertion of his right to self-representation at his criminal trial. The defendant appeals from the court's judgment, arguing that the court improperly concluded that his interest in self-representation was outweighed by the potential disruption of the trial already in progress that would have occurred had he been permitted to represent himself. We affirm the judgment of the trial court.

Following the defendant's conviction, after a jury trial, of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-48 (a), the defendant was sentenced to a term of incarceration of twenty years, suspended after thirteen years, followed by five years of probation. He appealed to this court, which affirmed the judgment of conviction. *State* v. *Flanagan*, 93 Conn. App. 458, 890 A.2d 123 (2006).[1] This court's opinion in that appeal sets forth the factual basis on which the state premised criminal liability. Id., 460–63. Thereafter, this court granted the defendant's motion for reconsideration and reargument en banc, in which he challenged this court's

---

[1] That appeal followed an earlier appeal in which the defendant was subsequently convicted, after a joint jury trial, of two counts of murder, two counts of attempt to commit murder, conspiracy to commit murder and conspiracy to commit assault in the first degree, and was granted a new trial. *State* v. *Cummings*, 67 Conn. App. 734, 737–38, 789 A.2d 1063 (2002). In connection with that prior, vacated conviction, the trial court sentenced the defendant to a total effective term of imprisonment of 140 years. Id., 737.

rejection of one of the several claims that he raised on direct appeal, namely, that the trial court, *Shortall, J.,* had violated his right to self-representation as guaranteed by the United States constitution. *State* v. *Flanagan,* 102 Conn. App. 105, 106–107, 925 A.2d 385 (2007). The defendant argued that the trial court failed to canvass him pursuant to Practice Book § 44-3 after he had clearly and unequivocally asserted his right to self-representation and, thus, failed to give proper effect to his assertion. Id., 112. This court, sitting en banc, rejected the defendant's argument that he asserted his right to self-representation at trial and affirmed the judgment of conviction.[2] Id., 132.

Subsequently, our Supreme Court granted the defendant's petition for certification to appeal. *State* v. *Flanagan,* 284 Conn. 922, 933 A.2d 725 (2007). Our Supreme Court reversed this court's judgment after concluding that the defendant had, in fact, clearly and unequivocally asserted his right to self-representation at trial. *State* v. *Flanagan,* 293 Conn. 406, 421–27, 978 A.2d 64 (2009).[3] In determining a proper resolution of the appeal, the Supreme Court then addressed an alternate ground for affirming this court's judgment upholding the conviction, specifically, that the trial court properly

[2] This court's decision in *State* v. *Flanagan,* supra, 102 Conn. App. 105, superseded this court's prior analysis of the defendant's self-representation claim in *State* v. *Flanagan,* supra, 93 Conn. App. 468–79. *State* v. *Flanagan,* supra, 102 Conn. App. 107 n.2.

[3] In *State* v. *Carter,* 200 Conn. 607, 612, 513 A.2d 47 (1986), our Supreme Court set forth what became known in this state's self-representation jurisprudence as the "clear and unequivocal test," explaining that "[t]he constitutional right of self-representation depends . . . upon its invocation *by the defendant* in a clear and unequivocal manner." (Emphasis added.) In contrast with the analysis of this court's majority in *State* v. *Flanagan,* supra, 102 Conn. App. 105, our Supreme Court, analyzing whether in the present case the defendant's statements to the trial court constituted a clear and unequivocal assertion of the right to self-representation, did not focus its analysis only on the utterances of the defendant, but also on the manner in which the trial court responded to them. *State* v. *Flanagan,* supra, 293 Conn. 425–27.

denied the defendant's midtrial request for self-representation by using an " 'exceptional circumstances' " test to balance his desire to proceed in a self-represented capacity against the resulting prejudice to the state.[4] Id., 427–34.

Our Supreme Court held that the trial court improperly applied an " 'exceptional circumstances' " test in denying the defendant's request to proceed in a self-represented capacity. Id., 428–30. The court observed that a defendant's right to self-representation is *"unqualified* if invoked prior to the start of the trial"; (emphasis in original; internal quotation marks omitted) id., 430; but that a specific balancing test should be applied to requests for self-representation made after a trial has begun. See id., 431. The court stated:

"Indeed, the United States Supreme Court recognized in *Faretta* v. *California,* [422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)], that there are three grounds for denying a defendant his right to self-representation: (1) *he makes the request in untimely fashion such that granting it would disrupt the proceedings*; [id., 807]; (2) the defendant engages in serious obstructionist misconduct; id., 834 n.46; and (3) the defendant has not knowingly and intelligently waived his right to counsel. Id., 835; see 2 W. LaFave & J. Israel, Criminal Procedure (1984) § 11.5 (d), pp. 47–49. . . . *State* v. *Townsend,* 211 Conn. 215, 221 n.4, 558 A.2d 669 (1989). With respect to the timeliness ground . . . [the United States Court of Appeals for] the Second Circuit has stated previously that [a] criminal defendant must make a timely and unequivocal request to proceed pro se in order to ensure the orderly administration of justice and prevent the

---

[4] After concluding that the defendant did not assert his right to self-representation, this court did not reach the state's argument that a request for self-representation, if made, nevertheless should have been denied because it occurred after the start of the trial. *State* v. *Flanagan,* supra, 102 Conn. App. 113 n.4.

disruption of both the pre-trial proceedings and a criminal trial. . . . Assuming, however, that a defendant's request to proceed pro se is informed, voluntary and unequivocal, [t]he right of a defendant in a criminal case to act as his own lawyer is *unqualified* if invoked prior to the start of the trial. . . . Distinct considerations bear upon requests made after a trial has begun. . . . *Williams* v. *Bartlett*, [44 F.3d 95, 99 (2d Cir. 1994)]. After the commencement of a trial, the right of self-representation is sharply curtailed . . . *Sapienza* v. *Vincent*, 534 F.2d 1007, 1010 (2d Cir. 1976); and a trial court faced with such an application must balance the legitimate interests of the defendant in self-representation against the potential disruption of the proceedings already in progress. . . . In exercising this discretion, the appropriate criteria for a trial judge to consider are [1] the defendant's reasons for the self-representation request, [2] the quality of counsel representing the [defendant], and [3] the [defendant's] prior proclivity to substitute counsel. . . . *Williams* v. *Bartlett*, supra, 99–100 n.1.

"We conclude that this balancing test employed by the Second Circuit represents an appropriate inquiry in evaluating the first ground for denying a defendant his right to self-representation suggested by the United States Supreme Court in *Faretta* v. *California*, supra, 422 U.S. 807, namely, whether the defendant made his request in untimely fashion such that granting it would disrupt the proceedings . . . . *State* v. *Townsend*, supra, 211 Conn. 221 n.4. Accordingly, we conclude that, when a defendant clearly and unequivocally has invoked his right to self-representation after the trial has begun, the trial court must consider: (1) the defendant's reasons for the self-representation request; (2) the quality of the defendant's counsel; and (3) the defendant's prior proclivity to substitute counsel. If, after a thorough

consideration of these factors, the trial court determines, in its discretion, that the balance weighs in favor of the defendant's interest in self-representation, the court must then proceed to canvass the defendant in accordance with Practice Book § 44-3 to ensure that the defendant's choice to proceed pro se has been made in a knowing and intelligent fashion. If, on the other hand, the court determines, on the basis of those criteria, that the potential disruption of the proceedings already in progress outweighs the defendant's interest in self-representation, then the court should deny the defendant's request and need not engage in a § 44-3 canvass." (Emphasis in original; footnote omitted; internal quotation marks omitted.) *State* v. *Flanagan*, supra, 293 Conn. 431–33.

The Supreme Court reversed the judgment of this court. Its remand order stated: "[T]he case is remanded to [the Appellate Court] with direction to remand the case to the trial court for further proceedings to determine if that court was required to canvass the defendant in accordance with Practice Book § 44-3; in the event that the court determines that it was required to canvass the defendant pursuant to § 44-3, a new trial is ordered." Id., 434.

On remand, the trial court, *D'Addabbo, J.*, held a hearing related to the issue framed by the Supreme Court's order.[5] The court issued a lengthy and thorough decision in which it concluded that "the defendant's request for self-representation should be denied and . . . a Practice Book § 44-3 canvass need not be conducted."

In its memorandum of decision, the trial court set forth the governing legal principles as set forth in the

[5] Citing canon 3 (c) (1) of the Code of Judicial Conduct (2010), Hon. Joseph M. Shortall, judge trial referee, recused himself from the proceedings on remand.

Supreme Court's decision. It was undisputed that the defendant asserted his right to self-representation *after the trial had begun.* Accordingly, the court addressed separately the reasons for the defendant's self-representation request, the quality of the defendant's trial counsel and the defendant's proclivity to substitute counsel. In relevant part, the court's decision states:

"The defendant has presented that the reason for requesting self-representation was to call witnesses in the defendant's case-in-chief. This reason was presented to Judge Shortall during the trial. Particularly, the defendant wanted to call three witnesses: Shannon Lamar, Fernando Rivera and 'Teely.' . . .

"The defendant was charged in the first trial with capital felony . . . two counts of murder . . . two counts of criminal attempt to commit murder . . . one count of conspiracy to commit murder . . . and one count of conspiracy to commit assault in the first degree . . . . The defendant was first presented for trial on January 5, 1999. He was represented by a special public defender, Herman Woodard. The defendant was convicted by a jury of all counts, except capital felony. The case was reversed on appeal on an unrelated issue . . . and transferred to the New Britain Judicial District on May 15, 2002. John Stawicki was appointed to represent the defendant.

"At the second trial, the defendant was charged with two counts of murder . . . two counts of criminal attempt to commit murder . . . one count of conspiracy to commit murder . . . and one count of conspiracy to commit assault in the first degree . . . . The defendant was convicted only of conspiracy to commit assault in the first degree and acquitted on the remaining charges. . . . It is from this second trial that the issues before this court originate.

"The underlying factual allegations are that on May 5, 1994, Chanito Roman, a Los Solidos member, was killed in a drive-by shooting. The Los Solidos members believed that a rival organization, the Latin Kings, were responsible for Roman's death. In light of that belief, the statewide leader of the Los Solidos, George Rivera, ordered members of that organization to kill two members of the Latin Kings for every Los Solidos member killed by a Latin King. On May 14, 1994, Walter Rodriguez, Reinaldo Mercado and Latin King members Patrick Gannon and Hector Rodriguez were in a vehicle stopped at the intersection of Overlook and Selander Streets in New Britain. A vehicle occupied by members of the Los Solidos opened gunfire into the vehicle occupied by members of the Latin Kings. Latin King members Patrick Gannon and Hector Rodriguez were killed. Walter Rodriguez and Reinaldo Mercado were injured. The defendant was one of the individuals arrested for the incident.

"The defendant was convicted at the first trial and received a total effective sentence of one hundred and forty years imprisonment.

"With this history, at the second trial, the defendant and Attorney Stawicki discussed presenting witnesses in the defense case-in-chief. The defendant and his counsel disagreed on the decision whether to call witnesses.

"[Addressing the court during his second trial, the defendant] stated on March 18, 2003:

" 'The Defendant: Well, my point of view is that I feel in my last trial, my attorney rested and I was found guilty. And I feel that what he's explained to me as his strategy is too narrow and it doesn't leave any room for other—for the jury to make any other options than the one option. And if they don't see it in this particular way, then I'm pretty much going to be found guilty.

And I feel to get twelve people to see something one way is kind of difficult. And I believe that through calling other witnesses, we can give them other options to look at the case from a different angle. So, if they don't believe what he's trying to put forward they could see it as another way. I mean, to me it's like trying to protect your King with a pawn. And the pawn can only protect coming straight on. And that's what he wants. He wants the jury to come directly. If they don't come this path, or they choose to come from the right or the left or from behind, he's already told them. I'm found guilty.'

"The defendant further indicated the basis for the disagreement with his counsel:

" 'The Defendant: I understand. See like, one of the disagreements we have is he doesn't want to call any witnesses. Now, there's a witness that's a FBI informant that places me in a totally different city. And we have a disagreement about calling this individual. So, I mean, to me, that doesn't make any sense but to him, whatever his reasoning is, he doesn't want to call this individual. And in situations like that—I mean, I can understand if I was calling someone that basically there was nothing there. I mean, just to waste the court's time. But I mean, someone who is going to place me in a totally different city, that's already testified in Federal Court against over fifty Solidos, and he's going to place me in a different city with him? That, to me, sounds relevant to me. I don't understand. He has his reasonings for not calling this individual. I mean, I can't see myself doing a hundred and forty years for a crime I didn't—I did not commit, without doing everything possible that I think can be done. I've already done that. I already got convicted of this crime; didn't commit this crime and had a hundred and forty years. People don't listen to you once you're inside jail. You can holler til your lungs— til you bleed out your mouth. People don't want to hear it. You could say you didn't do it; they could say, well

everybody in jail says they didn't do it. So I feel before I get convicted with all this time for a crime I didn't commit, I should have some say so. And I don't think that, if we rested right now, I feel I'll be convicted.'

"Later in the court day, the defendant inquired as to his representation by Attorney Stawicki:

" 'The Defendant: I mean, If he's not going to do what I feel is in my best interest, I don't think that he should be my attorney. I mean, this is my life. Like I explained to him, when this is over, if I lose, he just goes on to another case. I'm the one that has to go to jail. And he's not doing what I feel is in my best interest. He's doing what he feels is in his best interest, not mine. So I don't understand how his interest comes before my interest.'

"Judge Shortall denied the defendant's request for self-representation.

"The court next determines if this factor, the defendant's reasons for the self-representation request, weighs in favor of the defendant's interest in self-representation pursuant to the Supreme Court's directed analysis.

"The defendant's reason for the self-representation request, at first review, appears to have legitimacy. . . . Although the reason for the defendant's desire to represent himself, to call witnesses, may be legitimate on its face, that does not automatically lead to the conclusion that this factor weighs in favor of the defendant's interest in self-representation. It is the trial court's duty to analyze the defendant's stated reason within the context of the trial.

"The decision to call witnesses does not stand alone. The decision to call witnesses and the potential effectiveness of such witness' testimony is a trial strategy decision. . . .

"Although there are basic rights that the attorney cannot waive without the fully informed and publically acknowledged consent of the client, the lawyer has—and must have—the full authority to manage the conduct of the trial.

"To allow a defendant's desire to call witnesses in contravention of an attorney's expert decision would create an atmosphere of disruption for the defendant, the state and the fact finder during the trial.

"In the case before the court, the defense counsel's strategy was explained to this court. Counsel indicated that the defendant's request to call the three witnesses would not advance the defense's theory of the case. In fact, it was Attorney Stawicki's opinion that calling the witnesses would be shifting the burden of proof to the defense in this case where he believed the jury would find the defendant not guilty. . . . Additionally, the defendant's proposed witnesses carry with them potential risks which affect the determination of this factor weighing in favor or not in favor of the defendant.

"The court assesses the three proposed defense witnesses in light of their expected testimony.

" 'Teely' was presented by the defendant as a witness he wished to call who would have placed him in another city at the time of the incident. Although it may be inferred that the defense was aware of the true name of 'Teely' and his whereabouts, he was not disclosed as a potential alibi witness. His testimony, therefore, may have been excluded by the court.

"Shannon Lamar was also presented by the defendant as a witness he wished to call. The defense has indicated that the testimony of Shannon Lamar, who was [the defendant's] girlfriend, would have contradicted the state's witness, Pennie Yonan, by presenting a different version as to how the defendant arrived at Yonan's

house on the day before the homicides. This was inconsistent with the trial strategy presented by Attorney Stawicki, which was to challenge the credibility of Ms. Yonan, rather than give the jury the option to select conflicting testimony. Additionally, as proffered, Ms. Lamar's testimony served a limited purpose. Her testimony would have contradicted Pennie Yonan's only on the collateral matter of how the defendant arrived at Yonan's house.

"Fernando Rivera was the third witness that the defendant wished to call. Mr. Rivera was not originally on the defendant's witness list for the second trial. The defendant asserts that Mr. Rivera would have testified that [the defendant] was not present at the Los Solidos leaders' meeting where the two-for-one order to kill was given.

"After review of the proffered testimony of Mr. Rivera, it appears that his testimony was not critical or significant. Even if credited by the jury, Rivera's testimony, in light of all the other evidence presented, would not have absolved the defendant or precluded the jury from reaching a verdict of guilty. Evidence of the defendant's presence at a leaders' meeting where the general order to kill two Latin Kings for every Los Solidos member killed was made is not dispositive in a determination of guilt in this case. The jury could have inferred the defendant's knowledge of this order by other evidence introduced in the trial.

"Additionally, none of these witnesses were 'new' to defense counsel. He was aware of them and had an investigator speak to them, and [he] chose not to call them. Notably, these witnesses were not called by Attorney Woodard in the first Flanagan trial either. Moreover, the defendant did not seek the introduction of their testimony in the first trial.

"After consideration of these arguments, the court finds that this first factor, although compelling on its face, does not weigh in favor of the defendant's interest in self-representation. . . .

"The second factor of the balancing test that the court must consider is the quality of defense counsel's work during the trial. The attorney's quality of performance must be keenly reviewed.

"The defense argues that since the trial judge has recused himself, this factor should not be considered by the court. This court has agreed not to consider the outcome of the trial as a determination of defense counsel's performance at trial, as consideration of this request is addressed in the context of 'when the request [for self-representation] was made.' However, the record in this case is sufficient to permit this court to effectively consider defense counsel's performance during the trial. This court has reviewed the trial and jury selection transcripts, as well as some pretrial hearing transcripts.

"This court believes that it is appropriate and proper to consider Judge Shortall's assessment of defense counsel's performance in its consideration of the stated facts and when addressing the balancing test.

"On March 18, 2003, when speaking to the defendant, Judge Shortall indicated that: '[Attorney Stawicki] is a very experienced attorney. He's tried many murder cases. I've had the opportunity to observe his performance in this case from . . . January 8th when we had some hearings on motions. And as far as I am concerned, his performance has been beyond competent and [has] been superior.' . . .

"Judge Shortall stated later in the proceedings, when addressing [the defendant]:

" 'Well it doesn't appear to me . . . based on my observations of Mr. Stawicki's performance from January 8th to today, which is March 18th, that his decisions and his actions have been in his interest as opposed to yours. So I—and I can't imagine why he'd be changing courses now. I mean, Mr. Stawicki's decisions, as best as I have observed, have been solely in your interest. And his performance has been beyond competent and in my view, superior over the last two and a half months.' . . .

"Judge Shortall's assessment of defense counsel's performance was that it was 'superior.' This court accepts the trial court's observations and gives deference to it.

"Further, this court's own review of the trial and jury selection transcripts supports the opinion that defense counsel's actions were appropriate and competent. Counsel also presented competent trial strategy.

"There is no evidence presented that [the defendant] was dissatisfied with counsel's performance during the trial. Rather, [the defendant] challenged the trial strategy decision not to call certain witnesses. There is no evidence of an argument from [the defendant] that Attorney Stawicki was not representing him appropriately during the trial. The court can infer that [the defendant], up until that point in the trial, was satisfied with his counsel's representation.[6]

"After consideration of Judge Shortall's comments and an independent review of the record in assessing defense counsel's performance, this court finds defense counsel's performance to be competent and appropriate.

---

[6] The court observed, in a footnote, that "[a]lthough not part of the trial itself, another judge, the Honorable Susan Handy, the presiding criminal judge at the time, considered that 'Mr. Stawicki has been a great advocate for you [Mr. Flanagan]."

"The court finds that the second factor does not weigh in favor of the defendant's request for self-representation. . . .

"The third factor posed by the Supreme Court to be considered in assessing a defendant's midtrial request for self-representation is his prior proclivity to substitute counsel. The court's focus on this factor includes all of the trials that the defendant was involved in with respect to this matter.

"In the matter before this court, the court had the opportunity for some review of the defendant's conduct in [his first criminal trial] before Judge Espinosa and an extensive review in [his second criminal trial] before Judge Shortall. The defense has presented an affidavit from Attorney Herman Woodard, trial counsel for the initial . . . trial. Mr. Woodard indicates that [the defendant] never sought him to be removed as counsel. A review of the history of the trial before Judge Shortall indicates that during pretrial proceedings, [the defendant] requested that Attorney Stawicki be removed for failure to have an investigator assist in his defense. . . . Mr. Stawicki explained that, as a result of the transfer of the defendant's case from the Hartford Judicial District to the New Britain Judicial District, the assigned investigator was unable to continue due to a conflict. The situation was further exacerbated by budgetary issues. Mr. Stawicki resolved the issue by hiring a new investigator. As a result of this action, Mr. Stawicki continued as [the defendant's] counsel. It does appear that the defendant was not hesitant to request a dismissal of counsel when he was not satisfied with Attorney Stawicki's performance or decisions.

"Application of this third factor to the facts of this case does not weigh in favor of or against the defendant's interest in self-representation. . . .

"The court, after thorough consideration of these three factors, now weighs them against the potential disruption of the proceedings already in progress that would occur if the defendant's request was granted.

"The defendant's request for self-representation came at the close of the state's case, and after the testimony of thirty-seven . . . witnesses, the introduction of ninety-two . . . state exhibits, seventy-five . . . defense exhibits, almost two weeks of evidence, and twenty-one . . . days of jury selection.

"The defendant indicated that he requested self-representation so that he could present three witnesses. The court has previously discussed the nature of their testimony, and in two instances, the lack of disclosure.[7]

"As it relates to nondisclosure of an alleged alibi witness, even if the court were to allow this testimony, the defense would have to find and produce this witness. The state would have to be given an opportunity to question him in anticipation of his testimony. Even if 'Teely's' testimony were permitted, there is a likelihood of delay of the trial, which would present a potential loss of jurors, exposing the matter to a mistrial. One alternate juror already had been excused at the time the defendant made his request [for self-representation]. The same concern holds true with respect to the other undisclosed witnesses whom the defendant wished to call, and any rebuttal witnesses deemed necessary by the state as a result of these additional witnesses. This court has previously discussed the question of the effectiveness of the witnesses' testimony.

"The defendant argues there would be no delay as a result of his self-representation. The court is not bound to believe that assertion and does not credit it. . . .

---

[7] The record reveals that, of the three witnesses at issue, the defendant disclosed only Lamar as a potential witness at trial.

The defendant also has not indicated that if he were allowed to represent himself, no further requests for reinstatement of Attorney Stawicki or for new representation would occur. These considerations, of course, would have a different focus if the request had occurred prior to the start of trial and not at the point of the completion of the prosecution's case.

"The potential loss of jurors and additional time for presentation of evidence are to be considered within delay and prejudice to the state. All of these areas are of concern to the court. But these areas are not the sole consideration of potential disruption. Consideration must be given to the interruption of the management of trial strategy properly designated to the attorney for the defendant. 'Indeed, [g]iving the attorney control of trial management matters is a practical necessity. . . . Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial.' . . . *State* v. *Gore*, [288 Conn. 770, 779 n.10, 955 A.2d 1 (2008)]." (Citations omitted; footnotes altered.)

Our Supreme Court has described the trial court's application of this balancing test to a midtrial request for self-representation as being discretionary in nature. *State* v. *Flanagan*, supra, 293 Conn. 428 n.16, 431–32. Our Supreme Court has explained that "[i]n determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling, and we will upset that ruling only for a manifest abuse of discretion. . . . Despite this deferential standard, the trial court's discretion is not absolute. . . . Thus, [i]n reviewing a claim of abuse of discretion, we have stated that [d]iscretion means a legal discretion, to be exercised in

conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors." (Citations omitted; internal quotation marks omitted.) *State* v. *Jacobson*, 283 Conn. 618, 626–27, 930 A.2d 628 (2007).

On appeal, the defendant raises several claims in an attempt to demonstrate that the court improperly resolved the issue before it. We will address each of these claims, in turn.

I

First, the defendant claims that although our Supreme Court instructed the trial court to consider the quality of the defendant's counsel, the court improperly considered this criterion because it did not apply in this case. The defendant asserts that our Supreme Court did not explain *why* this was a proper criterion in its balancing test, that this criterion is irrelevant in light of the fact that he had advanced a legitimate reason for asserting his right to self-representation, and that the court's consideration of this criterion adversely affected the outcome of its balancing analysis in this case. We disagree.

The defendant asserts that he did not distinctly raise this claim before the trial court and that review is appropriate under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), the plain error doctrine codified in Practice Book § 60-5, and because the claim involves a constitutional issue of first impression. Our review of the record reveals that, at trial, the defendant's attorney argued that this criterion did not apply because Judge D'Addabbo, who did not preside over the defendant's criminal trial, was not in a position to evaluate Attorney

Stawicki's performance. Also, the defendant's attorney argued at length that this criterion should not be considered in the present case because the quality of Stawicki's performance was irrelevant in light of the fact that the defendant was not seeking self-representation on the ground that Stawicki was not performing competently, but because he had a legitimate interest in wanting to call witnesses on his behalf. The defendant argued that a consideration of Stawicki's performance in the context of the entire trial did not bear on the issue before the court and that, if anything, the court should evaluate his performance solely as it related to his decision-making in determining which witnesses to call and his questioning of those witnesses. In the context of his argument, the defendant's attorney emphasized that our Supreme Court did not clearly explain how this criterion should be considered. Our careful review of the transcript of proceedings reflects that, although he did not raise this claim before the trial court with all of the legal nuances apparent in his appellate brief, the defendant's attorney adequately apprised the trial court of the substance of the claim such that we may review it without recourse to any extraordinary means of review.

We reject the defendant's claim because, essentially, it asks this court to find that the trial court committed reversible error by following the plain language of the remand order of our Supreme Court in *State* v. *Flanagan*, supra, 293 Conn. 433–34. The defendant expends a great deal of his argument dissecting the merits of the test set forth in *Williams* v. *Bartlett*, supra, 44 F.3d 95. Yet, the defendant acknowledges that our Supreme Court included " 'quality of the defendant's counsel' " among the criteria to be addressed, and that it ordered the trial court in the present case, on remand, to apply the balancing test that it set forth. As our Supreme Court has explained: "Well established principles govern further proceedings after a remand by this court.

In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . . This is the guiding principle that the trial court must observe. . . . Compliance means that the direction is not deviated from. . . . It is the duty of the trial court on remand to comply strictly with the mandate of [this] court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that [this] court might have directed. The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein." (Internal quotation marks omitted.) *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 341, 15 A.3d 601 (2011). Thus, a claim that the trial court improperly followed the direction of our Supreme Court by considering the criterion as directed by that court is not persuasive.

Additionally, insofar as the defendant invites this court to consider whether our Supreme Court properly instructed the trial court to consider " 'the quality of the defendant's counsel,' " or properly reasoned that this criterion should be considered in the present case, we readily reject such a basis for reversal. "Because we are bound by the precedent set by our Supreme Court . . . we are not at liberty to ignore [relevant Supreme Court precedent]. As an intermediate appellate court . . . we are not at liberty to overrule, reevaluate or reexamine controlling precedent of our Supreme Court. See *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010) (it is manifest to our hierarchical judicial system that [the Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by [its] precedent). *Pite* v. *Pite*, 135 Conn. App. 819, 826–27, 43 A.3d 229 (2012)." (Internal quotation marks omitted.)

*State* v. *Smalls*, 136 Conn. App. 197, 203 n.4, 44 A.3d 866, cert. granted on other grounds, 306 Conn. 906, 52 A.3d 732 (2012). Our careful reading of our Supreme Court's opinion reflects that it did not limit consideration of this criterion to specific types of circumstances, but that it was generally to be considered in ruling on requests for self-representation after a trial has begun.[8] Thus, the trial court's consideration on remand of this criterion cannot be considered arbitrary or an abuse of its discretion.

## II

Next, the defendant claims that the trial court on remand properly considered " '[the defendant's] prior proclivity to substitute counsel,' " but that it improperly concluded that this criterion " '[did] not weigh in favor of or against the defendant's interest in self-representation.' " Essentially, he asserts that "[because] there was a lack of proclivity to change counsel, and the only request to change counsel itself had a justified basis, this factor should have weighed in favor of granting the defendant's request to proceed pro se . . . ."

The defendant, consistent with the record and the court's findings, asserts that he moved to substitute counsel only once during the lengthy history of proceedings related to this case. That motion, which was made during pretrial proceedings, was based on Stawicki's failure to retain the services of an investigator due to conflict and budgetary issues. The issue, apparently, was remedied by Stawicki, who hired a new investigator and, without incident, remained as counsel until the defendant asserted his right to self-representation.

The defendant urges us to conclude that this request for substitute counsel did not reflect a desire to disrupt

[8] The defendant does not appear to argue on appeal that the trial court's assessment of Stawicki's performance as "appropriate and competent" was not fully supported by the facts in the record.

the proceedings, but that it was warranted because it arose from a good faith concern related to his defense, one which was echoed before the court by Stawicki. The defendant impliedly argues that a lack of a significant history of requesting substitute counsel always weighs in favor of a defendant's request for self-representation and emphasizes that he only once moved for substitute counsel. The court, analyzing the incident on remand, did not find that the defendant's request for substitute counsel was disruptive, unwarranted or not made in good faith. Rather, the court merely concluded that "[the] [a]pplication of this . . . factor to the facts of this case does not weigh in favor of or against the defendant's interest in self-representation."

In undertaking the balancing test set forth by our Supreme Court, the trial court's role was to consider the enumerated criteria for the purpose, ultimately, of determining whether the defendant's legitimate interest in self-representation is outweighed by the potential disruption of the trial proceedings already in progress. The defendant's argument reflects a view that a court, considering a midtrial request for self-representation, considers the relevant criteria and simply engages in a mathematical calculation to determine how many criteria weigh in a defendant's favor. Our Supreme Court, however, did not explain the proper analysis in such terms, but merely instructed the trial court to exercise discretion after a careful consideration of the enumerated criteria.

Here, there is no basis on which to conclude that, had the court found that this criterion weighed in the defendant's favor, the outcome of its decision would have been any different. To the contrary, the court's reliance on the other relevant criteria, which we uphold as proper, reflects that the court, in its discretion, was swayed by its determination that the reasons for the request were not strong and that the request, if granted,

likely would have disrupted the proceedings in progress. Thus, it appears that the trial court on remand did not view the defendant's conduct with regard to prior requests for substitute counsel as affecting its decision. The defendant has not met his high burden of demonstrating that the court's determination in this regard was arbitrary or that it reflected an abuse of discretion.

## III

Next, the defendant claims that the trial court on remand improperly evaluated his reasons for the self-representation request. The defendant argues that this factor weighed in his favor because he advanced a legitimate reason for his request in that he represented that he wanted to present witnesses in his defense. Further, he argues that the court engaged in an improper analysis—effectively delegitimizing his reason—by thereafter evaluating the likely effect of that course of action had it been allowed to be implemented. We disagree.

As a preliminary matter, we observe that during the evidentiary portion of the remand hearing, the defendant's attorney, on several occasions, objected to any evaluation of the effectiveness of the defendant's reasons for self-representation, that is, whether the witnesses that he intended to call in his defense would have been helpful to his defense. The defendant's attorney argued that any evidence related to the three witnesses at issue, including Stawicki's rationale for not calling them as witnesses, as well as Stawicki's evaluation of the defendant's decision to attempt to call these witnesses, was not relevant to any issue before the court.[9] He argued that, in the context of the performance prong,

[9] Although, following an objection from the defendant's attorney, the court indicated that it considered evidence of Stawicki's rationale for not calling the witnesses at issue as being relevant to an evaluation of Stawicki's representation, it does not appear that the court admitted evidence of this nature with any limitation as to its use.

the only relevant evidence of Stawicki's performance would have been evidence related to his examination of defense witnesses at trial, and in the present case, none were called. Essentially, the defendant's attorney stated that any in depth evaluation of whether the reason underlying the self-representation request was beneficial to the defense was inconsistent with our Supreme Court's remand order.

In setting forth the criteria to be considered, our Supreme Court stated that the trial court on remand should consider "the defendant's reasons for the self-representation request . . . ." (Internal quotation marks omitted.) *State* v. *Flanagan,* supra, 293 Conn. 431. The Supreme Court did not explain the *manner* in which a trial court should evaluate this criterion, except that it should exercise discretion, and its analysis should determine whether the defendant's interest in self-representation outweighs the potential disruption of the proceedings already in progress. In *State* v. *Pires,* 310 Conn. 222, 254, 77 A.3d 87 (2013), a defendant, prior to sentencing, requested self-representation on the ground that he was dissatisfied with the work of his counsel. In concluding that the trial court properly had exercised its discretion in denying the untimely request, our Supreme Court observed that the trial court did not determine that this reason weighed in the defendant's favor, but determined that the defendant's reasons were inconsistent with its assessment that trial counsel had performed competently. See id. Similarly, in *State* v. *Bozelko,* 119 Conn. App. 483, 499, 987 A.2d 1102, cert. denied, 295 Conn. 916, 990 A.2d 867 (2010), a defendant requested self-representation on the basis of her dissatisfaction with her attorney. In concluding that the trial court properly had exercised its discretion in denying the untimely request, this court observed that the trial court did not determine that this

reason weighed in the defendant's favor, but determined that it was not compelling. Id., 499–500.

Here, the trial court considered the reason underlying the defendant's self-representation request.[10] It conducted a thorough analysis of the defendant's stated rationale, namely, to call witnesses in his defense. As the court observed, the witnesses at issue were not called in the defendant's prior trial, the defendant did not seek to call these witnesses in the prior trial and the witnesses were not new to the defense. Ultimately, the court determined that the reason for self-representation advanced by the defendant did not weigh in his favor because it would not have been beneficial to the defense. The defendant appears to equate a "legitimate" reason for self-representation with one that is not grounded in a desire to cause disruption or delay, but is genuinely advanced and is related to a legitimate right of a defendant in furtherance of his defense. We recognize that the court did not find that the defendant's request was not genuinely made or that it was made for the purpose of disrupting the proceeding. In fact, the court deemed the reason to be facially legitimate as it related to a fundamental right of a defendant to present a defense. Nonetheless, a defendant's right to conduct his own defense, is "not unqualified when that request is made after trial proceedings have commenced . . . ." *State* v. *Pires*, supra, 310 Conn. 251. There is no authority for the proposition that a reason related to a fundamental right, such as the right to present a defense, required the court to conclude that it weighed in the defendant's favor and to rule in his favor. It seems inconsistent with a proper analysis to conclude that the court was precluded from evaluating the nature of the evidence that the defendant wished

---

[10] The defendant also argues that the court "erroneously underestimated" the effect that the three witnesses at issue would have had on the trial. We conclude that the court's thorough analysis in this regard is supported by the evidence and is sound.

to present to determine if it would have been admissible and beneficial to the defense such that the request justified a disruption in the trial proceeding in that it likely would have affected the outcome of the trial. In light of the broad discretion afforded trial courts in ruling on untimely requests for self-representation, there is no basis for us to conclude that the court's thorough analysis of the reasons underlying the defendant's request was arbitrary or improper.

## IV

Finally, the defendant claims that the trial court on remand overestimated the potential disruption to the proceeding already in progress and based its decision on an improper consideration, namely, whether granting the request would interrupt the management of trial strategy properly designated to the defendant's attorney.

In *State* v. *Flanagan*, supra, 293 Conn. 433, our Supreme Court instructed that the trial court, when ruling on an untimely request for self-representation, should determine, on the basis of the criteria set forth, whether "the potential disruption of the proceedings already in progress outweighs the defendant's interest in self-representation . . . ." The Supreme Court did not elaborate on the manner in which a trial court should come to this determination, but its broad language reflects that a trial court, in its discretion, should weigh any considerations that would affect the proceedings already in progress. See id. Here, the court considered the potential that granting the defendant's request could cause a delay in an already lengthy trial. In this regard, the court discussed the time necessary to locate and produce the defendant's witnesses,[11] as well as the time necessary for the state to investigate the witnesses.

[11] At the hearing in the present matter, the defendant's attorney represented that the testimony from the witnesses at issue would have been "very short," but he stated that he was unsure of the degree to which the defendant was prepared to call the witnesses at his criminal trial. The court inquired

The court also discussed the potential that granting the defendant's request would expose the case to a mistrial due to a loss of jurors.[12] Incident to these concerns, the court also expressed a concern that presenting the testimony of witnesses would entitle the state to call rebuttal witnesses, thereby giving rise to greater delay in the proceeding. Additionally, when considering the disruption to the proceeding, the court considered the prejudice to the state that potentially could occur if it granted the defendant's request at that point in the trial. Such issues of prejudice are relevant to the extent that they will occasion delay in the proceedings.

We carefully have considered the court's evaluation of these factors, all of which were appropriate to a determination of whether the defendant's request, if granted, potentially would disrupt the proceedings already well in progress.[13] In so doing, we are mindful

as to the defendant's ability to produce his witnesses at trial. The defendant's attorney stated that Rivera was an inmate at Osborn Correctional Institution and "it would not have been difficult to obtain his presence as a witness." Lamar, he represented, lived locally and would have been available as a witness without resort to a subpoena. The defendant's attorney represented: "As to Teely, the information that I have been given by [the defendant] is that because he was an FBI informant, [the defendant] actually reached out to the FBI and spoke with somebody there—although he doesn't remember who he spoke with—who said that if your lawyer wants Teely there just have your lawyer call us and we'll make sure he is there." The defendant indicated that this information was accurate. Certainly, in its role as finder of fact, the court was free to call into question the credibility of and logic of the representations made in this regard.

[12] We note that a loss of jurors reasonably could arise due to delay in the proceedings or due to the fact that that the defendant wished to present testimony from witnesses who had not been disclosed to jurors during jury selection.

[13] Among his appellate arguments, the defendant asserts that the court's observation concerning the potential loss of jurors following the state's presentation of thirty-seven witnesses demonstrates unfairness to the defense, presumably because the state was not similarly curtailed in calling witnesses during its case-in-chief. This argument is unpersuasive because it ignores the reality that the defendant's right to represent himself and present the witnesses at issue was curtailed only because his request for self-representation was untimely and, thus, was properly subject to the

that the court's analysis entails a balance of several factors and that we must give "considerable weight . . . to the trial judge's assessment of this balance." *United States* v. *Denno*, 348 F.2d 12, 15 (2d Cir. 1965), cert. denied sub nom. *DiBlasi* v. *McMann*, 384 U.S. 1007, 86 S. Ct. 1950, 16 L. Ed. 2d 1020 (1966). On the basis of our review of the court's analysis, we do not conclude that the defendant has demonstrated that the trial court on remand abused its discretion in determining that granting his request, at the close of the state's case, potentially would have disrupted the proceedings.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

discretion of the court. The court did not deny the defendant an opportunity to present evidence because the presentation of evidence would have taken too much time at trial; the defendant was denied an opportunity for self-representation because his untimely request for self-representation was outweighed by legitimate concerns related to the proceedings in progress.

Also, the defendant asserts that the court was "misguided" in its concern that a longer trial could lead to additional lost jurors, that is, jurors unable to continue to serve on the jury, because there was no danger of the trial exceeding the estimated time of trial provided to jurors during jury selection. As a preliminary matter, it was up to the court to reach a determination concerning the likely delay in the proceedings and the risk that jurors would be lost because of such delay. It was reasonable for the court to conclude that, following two weeks of evidence, any delay risked a loss of one or more additional jurors. Furthermore, contrary to the subjective view of the defendant, it was reasonable for the court to conclude that the defendant's request, if granted, would cause delay. Secondly, the defendant's emphasis on the court's evaluation of the issue of delay in the proceedings belies the fact that the court did not base its decision to deny the defendant's request merely on the basis of delay alone, but evaluated the potential for disruption in the proceedings against the defendant's interest in self-representation, which it did not find to be strong.

[14] As set forth earlier in this opinion, incident to its analysis of disruption of the proceedings, the court, at the end of its analysis, referred to the proposition that "[c]onsideration must be given to the interruption of the management of trial strategy properly designated to the attorney for the defendant," and cited case law in support of it. The court did not elaborate on the relevance of the proposition or indicate that its decision was based on the fact that granting the defendant's request would have the effect of

interfering with Stawicki's trial management. The defendant challenges the applicability of this proposition to the narrow issue before the court. Although such a consideration does not clearly follow from our Supreme Court's remand order, we recognize that an interruption or change in trial strategy, from that of Stawicki to that of the defendant, could delay or lengthen the proceedings in progress. Specifically, a change in trial strategy could have resulted in, among other things, the defendant calling additional witnesses and presenting additional evidence, the state calling additional witnesses and presenting additional evidence in rebuttal, and the defense or the state recalling witnesses as a consequence of the defendant's new trial strategy. The trial court found there was no indication that the defendant, if permitted to represent himself, would not later request that Stawicki represent him once again or that he receive representation from another attorney. Thus, it is readily foreseeable that changes in trial management and trial strategy could significantly disrupt the proceedings already in progress. We recognize, however, that adherence to Stawicki's trial management of trial strategy is by no means sacrosanct, for if the defendant's interest in self-representation outweighed the potential for disruption to the proceedings, it is the defendant, not Stawicki, who would control trial management matters on behalf of the defense from that point forward.